

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00344-CV

**NANCY ROSE BEDDINGFIELD AND STEVEN R. PITZNER,**
                                        **Appellants**

 **v.**

**NANCY I. BEDDINGFIELD, INDIVIDUALLY AND
AS EXECUTOR OF THE ESTATE OF JAMES A. BEDDINGFIELD,
DECEASED, AND AS TRUSTEE OF THE TESTAMENTARY
TRUSTS OF JAMES A. BEDDINGFIELD, DECEASED,
JAMES R. BEDDINGFIELD, HARTFORD LIFE INSURANCE
CO., BAIRD, CREWS, SCHILLER & WHITAKER, P.C., AND
OSBORNE, HELMAN, KNEBEL & DELEERY, LLP,**

                                        **Appellees**


---

**From the 369th District Court
Leon County, Texas
Trial Court No. 0-15-45**

---

## MEMORANDUM OPINION

---

In this appeal, Appellant Nancy Rose Beddingfield (Rose) challenges the trial

court's granting of the motions to dismiss pursuant to Texas Rule of Civil Procedure 91a

filed by the Appellees: (1) Nancy I. Beddingfield (Nancy), individually, as executor of

the estate of James A. Beddingfield (Mr. Beddingfield), deceased, and as trustee of the testamentary trusts of Mr. Beddingfield, deceased; (2) James R. Beddingfield (James); (3) Hartford Life Insurance Co. (Hartford); (4) Baird, Crews, Schiller & Whitaker, P.C. (BCSW); and (5) Osborne, Helman, Knebel & Deleery, LLP (OHKD). Rose also challenges the trial court's award of attorneys' fees under Rule 91a to Nancy, James, and Hartford. Finally, Rose and Appellant Steven R. Pitzner challenge the trial court's assessment of sanctions against them and the order that they, jointly and severally, must pay the attorneys' fees that Nancy and James incurred in preparing the motion for sanctions.

## Background

Mr. Beddingfield was Nancy's husband and Rose's and James's father. He died in 2013. Several months after his death, Rose sued her mother Nancy, individually, as executor of Mr. Beddingfield's estate, and as trustee of Mr. Beddingfield's testamentary trusts. In the suit, Rose challenged Nancy's handling of Mr. Beddingfield's estate and testamentary trusts. Attorney Pitzner represented Rose in the litigation. Kenneth Valka, an attorney with the law firm of BCSW, represented Nancy.

The suit was eventually resolved by a mediated settlement agreement. The mediator was an attorney with the law firm of OHKD. The mediated settlement agreement stated in pertinent part that Rose shall be entitled to one-half of the cash surrender value of a life insurance policy issued by Hartford. Subsequently, a trust in Rose's name received a check from Hartford in the amount of about $335,000, and Rose's brother James received the other one-half of the cash surrender value of the life insurance policy.

Thereafter, Rose, acting *pro se*, filed a second suit—the suit underlying this appeal—again against Nancy, individually, as executor of Mr. Beddingfield's estate, and as trustee of Mr. Beddingfield's testamentary trusts. In the second suit, Rose generally alleged that when the first suit was being resolved, she had been informed that Nancy was the owner of the Hartford life insurance policy. Rose alleged that she had later learned, however, that the life insurance policy had actually been owned at that time exclusively by a trust for her benefit. Rose asserted claims against Nancy for breach of contract, breach of fiduciary duty, fraud, and negligence. Rose later amended her petition twice, ultimately adding as defendants James, Hartford, BCSW, and OHKD.

Each of the defendants filed a Rule 91a motion to dismiss, which the trial court granted, dismissing with prejudice all of Rose's causes of action against each defendant. Nancy, James, and Hartford each also filed a motion for attorneys' fees under Rule 91a, which the trial court granted. Nancy, James, and BCSW further filed a motion for sanctions against Rose and Pitzner, which the trial court granted pursuant to Rule of Civil Procedure 13, Chapter 10 of the Civil Practice and Remedies Code, and the trial court's inherent power. The trial court assessed sanctions against Rose in the amount of $25,000, payable to Nancy and James, and against Pitzner in the amount of $10,000, payable to Nancy and James, and ordered that Nancy and James recover from Rose and Pitzner, jointly and severally, the attorneys' fees that they incurred in the preparation of their motion for sanctions. This appeal ensued.

**Rose's First Issue**

In her first issue, Rose contends that she alleged plausible claims against Nancy for breach of contract, breach of fiduciary duty, fraud, and negligence/gross negligence and that the trial court therefore erred in granting Nancy's Rule 91a motion to dismiss.

*Rule 91a Motion to Dismiss*

Texas Rule of Civil Procedure 91a provides in pertinent part:

> **91a.1 Motion and Grounds.**  Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact.  A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.  A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

> **91a.2 Contents of Motion.**  A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

> ....

> **91a.6 Hearing; No Evidence Considered.**  Each party is entitled to at least 14 days' notice of the hearing on the motion to dismiss.  The court may, but is not required to, conduct an oral hearing on the motion.  Except as required by 91a.7 [regarding costs and attorney fees], the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.

TEX. R. CIV. P. 91a.1, 91a.2, 91a.6.  *See generally id.* R. 59 ("Notes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings by copies thereof, or the originals, being attached or filed and referred to as such, or by

copying the same in the body of the pleading in aid and explanation of the allegations in the petition or answer made in reference to said instruments and shall be deemed a part thereof for all purposes."). We review the trial court's dismissal of a suit under Rule 91a *de novo* because "the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam).

### Breach of Contract

Rose first contends that she alleged a plausible claim against Nancy for breach of contract and that the trial court erred in granting Nancy's Rule 91a motion to dismiss as to such claim. The elements of a breach-of-contract claim are: (1) there is a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Runge v. Raytheon E-Sys., Inc.*, 57 S.W.3d 562, 565 (Tex. App.—Waco 2001, no pet.).

In her first amended petition, Rose alleged the following in support of a breach-of-contract claim against Nancy: Nancy, through her attorney Valka, committed to the trial court "to take care of all of the issues related to redemption" of the Hartford life insurance policy. Nancy, through Valka, accordingly "took on the responsibility contractually to redeem the policy and secure the total 'cash surrender value' of the policy ... for the benefit of the true owner of the policy being Rose's irrevocable trust." Nancy, through Valka, breached the contract "by securing Rose's signature at the court's behest at the 1-29-15 hearing to 50% of the policy proceeds for Rose and 50% of the policy proceeds for her brother, James." Additionally, Rose asserted that the following alleged

actions by Nancy constituted breach of contract: her failure "to abide by the terms of the Hartford contract" and her failure to cooperate with Rose's former attorney Pitzner in securing redemption of the funds owed to Rose under the life insurance policy.

In Nancy's Rule 91a motion to dismiss, she asserted that Rose's breach-of-contract claim against her had no basis in law. More specifically, Nancy stated that even if Rose's allegations were taken as true, together with reasonable inferences drawn from them, Rose could not show that she and Nancy, or that Nancy and Pitzner, were parties to any contract. Nancy contended that Rose, therefore, could not prove the remaining elements of a claim against her for breach of contract. The trial court granted Nancy's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against Nancy for breach of contract.

Rose argues in this appeal that the trial court erred in its ruling because she alleged a breach of a *unilateral* contract by Nancy when she alleged that Nancy's agent Valka made an oral contract "to redeem the policy and secure the total 'cash surrender value' of the policy ... for the benefit of the true owner of the policy being Rose's irrevocable trust" and that Nancy, through Valka, breached the contract by forcing Rose to sign documents that required her to forfeit fifty percent of the policy proceeds. Nancy responds that even if Valka made an offer, however, Rose failed to demonstrate an acceptance on her part and therefore cannot show that a valid contract existed.

An enforceable contract is formed when the following essential elements are satisfied: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and

delivery of the contract with the intent that it be mutual and binding. *Franco v. Ysleta Indep. Sch. Dist.*, 346 S.W.3d 605, 608 (Tex. App.—El Paso 2009, no pet.). A contract must also be based on consideration, or "mutuality of obligation." *Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970)).

> Unlike a bilateral contract, in which both parties make mutual promises, *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943), a unilateral contract is created when a promisor promises a benefit if a promisee performs, *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 303 (Tex. 2009). The requirement of mutuality is not met by an exchange of promises; rather, the valuable consideration contemplated in "exchange for the promise is something other than a promise," i.e., performance. RESTATEMENT OF CONTRACTS § 12 cmt. a (1932). A unilateral contract becomes enforceable when the promisee performs. *Vanegas*, 302 S.W.3d at 303. [The Texas Supreme Court has] explained that "'[a] unilateral contract occurs when there is only one promisor and the other [party] accepts . . . by actual performance [or forbearance],'" rather than by the usual mutual promises. *Id.* at 302 (quoting 1 RICHARD A. LORD, WILLISTON ON CONTRACTS § 1.17 (4th ed. 2007)).

*City of Houston v. Williams*, 353 S.W.3d 128, 135-36 (Tex. 2011). "The performance or forbearance constitutes both acceptance of a promisor's offer and consideration." *Vanegas*, 302 S.W.3d at 304 (quoting 1 WILLISTON ON CONTRACTS § 1.17).

Rose contends that the following formed the unilateral contract in this case: Nancy, through Valka, promised "to redeem the [life insurance] policy and secure the total 'cash surrender value' of the policy ... for the benefit of the true owner of the policy being Rose's irrevocable trust" in exchange for Rose's performance of signing the settlement documents at the January 29, 2015 hearing and/or Rose's forbearance of further pursuit of the first lawsuit, which necessarily occurred as a result of signing the

settlement documents. But Rose's allegations regarding the *breach* of the contract are that Nancy, through Valka, "secur[ed] Rose's signature at the court's behest at the 1-29-15 hearing to 50% of the policy proceeds for Rose and 50% of the policy proceeds for her brother, James." Taking all of Rose's allegations as true, Nancy would therefore have breached a not-yet-formed unilateral contract. In fact, according to Rose, Nancy's alleged breach secured Rose's acceptance of Nancy's offer, forming the unilateral contract. That cannot be.

Accordingly, we conclude that even if Rose's allegations are taken as true, she did not allege, nor could it have been reasonably inferred from her allegations, that there was a valid contract that Nancy breached. Therefore, Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle Rose to relief on her claim against Nancy for breach of contract. *See Runge*, 57 S.W.3d at 565. Rose's claim against Nancy for breach of contract thus had no basis in law, and the trial court did not err in granting Nancy's Rule 91a motion to dismiss as to Rose's breach-of-contract claim against her. *See* TEX. R. CIV. P. 91a.1.

### Breach of Fiduciary Duty

Rose next argues that she alleged a plausible claim against Nancy for breach of fiduciary duty and that the trial court erred in granting Nancy's Rule 91a motion to dismiss as to such claim. The elements of a breach-of-fiduciary-duty claim are: (1) the existence of a fiduciary relationship between the plaintiff and defendant; (2) the defendant's breach of the fiduciary duties arising from that relationship; and (3) injury to

the plaintiff, or benefit to the defendant, resulting from that breach. *Plotkin v. Joekel*, 304 S.W.3d 455, 479 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

In her first amended petition, Rose alleged the following in support of a breach-of-fiduciary-duty claim against Nancy: Nancy and her attorney Valka "had a 'fiduciary obligation' as executor(s) and trustee(s) to be honest and to protect funds in their possession belonging to others and to properly notify others as to the true ownership of said funds." Nancy, through Valka, breached her fiduciary obligation by getting Rose to assign one-half of the cash surrender value of the Hartford life insurance policy to James instead of securing for Rose all of the funds owed to her under the policy.

In Nancy's Rule 91a motion to dismiss, she asserted that Rose's breach-of-fiduciary-duty claim against her had no basis in law. More specifically, Nancy stated that, because Rose alleged that she was the sole owner of the life insurance policy, Rose had failed to and could not establish that she and Nancy had a fiduciary relationship with respect to the policy. The trial court granted Nancy's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against Nancy for breach of fiduciary duty.

Rose argues in this appeal that the trial court erred in its ruling because she alleged that a fiduciary relationship existed between her and Nancy by virtue of her status as a devisee of Mr. Beddingfield's estate and Nancy's status as executor of Mr. Beddingfield's estate. Rose contends in her brief that Nancy, as executor, "owed a duty to all interested persons to collect both the probate and non-probate assets of her husband's estate and preserve them until delivered to the persons legally entitled to them." But Rose did not allege that the life insurance policy, or the cash surrender value of the policy, was

property of Mr. Beddingfield's estate. *See* Tex. Est. Code Ann. § 22.012 (West 2014) ("'Estate' means a *decedent's* property ....") (emphasis added)). Instead, Rose affirmatively alleged that the "true owner" of the life insurance policy was an irrevocable trust that was established for her benefit and for which she was the sole trustee.

Accordingly, we conclude that even if Rose's allegations are taken as true, she did not allege, nor could it have been reasonably inferred from her allegations, that she and Nancy had a fiduciary relationship with respect to the life insurance policy. Therefore, Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle Rose to relief on her claim against Nancy for breach of fiduciary duty. *See Plotkin*, 304 S.W.3d at 479. Rose's claim against Nancy for breach of fiduciary duty thus had no basis in law, and the trial court did not err in granting Nancy's Rule 91a motion to dismiss as to Rose's breach-of-fiduciary-duty claim against her. *See* Tex. R. Civ. P. 91a.1.

*Fraud*

Rose next argues that she alleged a plausible claim against Nancy for fraud and that the trial court erred in granting Nancy's Rule 91a motion to dismiss as to such claim. The elements of a fraud claim are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam).

In her first amended petition, Rose alleged the following in support of a fraud claim against Nancy: Rose signed a "Rule 11 Agreement" on July 22, 2014, as part of a mediated settlement of the first lawsuit. In the Rule 11 Agreement, Rose agreed to receive one-half of the cash surrender value of the Hartford life insurance policy. At the mediation, Nancy, Nancy's attorney Valka, and/or the mediator had represented to Rose that Nancy owned the life insurance policy and that, in settling the first lawsuit, Nancy was giving Rose a gift of $325,000, which was one-half of the cash surrender value of the policy. After the mediation, however, Rose learned that the representation was untrue; the life insurance policy had actually been owned solely by Rose's irrevocable trust. The mediator had made the representation based on information "apparently" furnished by Nancy to him. Nancy and Valka had made the representation to Rose knowing that it was false to secure from her the amount of $325,000, constituting the other half of the cash surrender value of the life insurance policy, for Rose's brother James. Before the mediation, Nancy and/or Valka "had made efforts ... to secure the policy proceeds and been 'turned down.'" Hartford had informed Nancy and Valka that the life insurance policy was owned solely by Rose's irrevocable trust.

Rose alleged that, on December 1, 2014, she and Nancy again attended mediation. At the second mediation, Nancy, through the mediator, "was adamant [that] she desired or indicated/reported" that the life insurance policy was owned by two trusts (one for

Rose and one for James) and that she "desired/stated" that Rose only secure one-half of the cash surrender value of the policy. Rose asserted:

> Since I was destitute at the time ... , I accepted at the time being "duped" by my mom, Nancy, and reluctantly and in "bad judgment" agreed to take 50% of the Hartford surrender value based on a $10,000 advance by my mom, Nancy, from a future settlement payment, so that I could have food to eat the next day and minimal funds to survive until the Hartford funds came in.

Rose alleged that, after the second mediation, she and her attorney Pitzner confirmed from Hartford's records that the life insurance policy and the cash surrender value of the policy did, in fact, belong to her at the time of the mediation and Rule 11 Agreement, which also confirmed that Rose was lied to again on December 1 by Nancy and/or Valka. Rose subsequently refused to sign any further documents for Hartford, as requested by Valka. Valka, on behalf of Nancy, therefore filed a "Motion to Enforce Mediated Settlement." On January 29, 2015, the trial court ordered Rose to sign certain documents so that Hartford could cancel the life insurance policy and award one-half of the cash surrender value to Rose and the other half to James. Rose ultimately received only one-half of the cash surrender value of the life insurance policy, and James received the other half.

In Nancy's Rule 91a motion to dismiss, she asserted that Rose's fraud claim against her "fail[ed] as a matter of law." More specifically, Nancy stated: "By entering into an agreement with Rose regarding the Hartford Policy on December 1, 2014, after gaining knowledge of any potential fraud on the part of Nancy, Rose waived any claim she had for fraud against Nancy." Nancy also noted that since Rose had filed her original petition

in the underlying suit, she had sent documents to Hartford claiming one-half of the life insurance policy and had received the funds from Hartford. The trial court granted Nancy's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against Nancy for fraud without explanation.

In her briefing in this appeal, Rose does not specifically address Nancy's waiver claim. Rose states generally that "any defensive theory asserted as a basis for dismissal may be considered by the trial court only to the extent that the defensive theory is conclusively established by the allegations of the plaintiff's petition." But Rose does not address in her briefing whether her allegations against Nancy regarding fraud did or did not conclusively establish waiver.

When the trial court does not specify upon what ground it relied, a party appealing the grant of a motion to dismiss under Rule 91a must challenge every ground upon which the trial court could have granted the motion. *Parkhurst v. Office of Attorney Gen.*, 481 S.W.3d 400, 402 (Tex. App.—Amarillo 2015, no pet.). If a party fails to address any particular ground, we must uphold the order on the unchallenged ground. *Id.* Consequently, we must uphold the trial court's granting of Nancy's Rule 91a motion to dismiss as to Rose's fraud claim against Nancy on the unchallenged ground of waiver.

*Negligence/Gross Negligence*

Finally, Rose argues that she alleged a plausible claim against Nancy for negligent undertaking and that the trial court erred in granting Nancy's Rule 91a motion to dismiss as to such claim. The elements of a negligent-undertaking claim are: (1) the defendant undertook to perform services that it knew or should have known were necessary for the

plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance, or (4) the defendant's performance increased the plaintiff's risk of harm. *Pugh v. Gen. Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Rose also contends that Nancy acted with gross negligence.

In her first amended petition, Rose alleged the following in support of a negligence/gross negligence claim against Nancy: Nancy, through her attorney Valka, committed to the trial court "after the hearing on 1-29-15 to take care of all of the issues related to redemption" of the Hartford life insurance policy. Nancy, through Valka, accordingly "took on the responsibility contractually to redeem the policy and secure the total 'cash surrender value' of the policy ... for the benefit of the true owner of the policy being Rose's irrevocable trust." Also, "pursuant to express written and/or verbal agreements, made by and through their agents and employees," Nancy and Valka had a duty to search out and inform Rose of the true ownership of the life insurance policy. Nancy's and/or Valka's failure to do so constituted negligence/gross negligence, which resulted in the loss of one-half of the cash surrender value of the life insurance policy and "other damages for which consequential damages as well as punitive damages are appropriate."

In Nancy's Rule 91a motion to dismiss, she asserted that Rose's negligence/gross negligence claim against her "fail[ed] as a matter of law." More specifically, Nancy stated that even taking Rose's allegations as true, together with inferences reasonably drawn from them, Rose failed to show the existence of a duty owed to her by Nancy regarding

the life insurance policy. The trial court granted Nancy's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against Nancy for negligence/gross negligence.

Rose argues in this appeal that the trial court erred in its ruling because she alleged the existence of a duty owed to her by Nancy. According to Rose, her allegations, taken as true, together with all reasonable inferences that may be drawn from them, show that Nancy undertook to perform services that Nancy knew or should have known were necessary to protect Rose's interest in the life insurance policy. *See id.* We disagree.

Rose's first amended petition established that, at all times relevant to Rose's negligence/gross negligence claim against Nancy, Nancy and Rose were opposing parties involved in litigation that involved the life insurance policy. Nancy was represented by Valka. Rose was represented by Pitzner until after December 1, 2014, the date of the second mediation, at which time, according to Rose's first amended petition, Rose was then aware that the life insurance policy had been owned solely by her irrevocable trust.

Rose argues that the fact that Rose had an attorney in the first lawsuit is irrelevant, but attorneys owe their clients the duty to act with ordinary care—*i.e.*, in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney. *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App.—Austin 2009, no pet.) (citing *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989)). Furthermore, the well-settled rule is that a party may not justifiably rely on an opposing attorney's statements made in an adversarial setting, such as litigation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794

(Tex. 1999); *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 635 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Therefore, accepting as true that Nancy and Valka undertook a duty to search out and inform Rose of the true ownership of the life insurance policy, we conclude that Nancy and Valka could not have known, nor should they have known, that such services were necessary to protect Rose's interest in the life insurance policy.

Similarly, accepting as true that Nancy, through Valka, committed to the trial court "after the hearing on 1-29-15 to take care of all of the issues related to redemption" of the life insurance policy, we conclude that Nancy and Valka could not have known, nor should they have known, that such services were necessary to protect Rose's interest in the life insurance policy. Rose's allegations in her first amended petition established that by the end of the January 29, 2015 hearing, Rose was already aware that the life insurance policy had been owned solely by her irrevocable trust, Rose had nevertheless agreed at the second mediation to take one-half of the cash surrender value of the policy, and the trial court had already ordered Rose to sign certain documents so that Hartford could cancel the life insurance policy and award one-half of the cash surrender value to Rose and the other half to James.

Therefore, Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle Rose to relief on her claim against Nancy for negligent undertaking. *See Pugh*, 243 S.W.3d at 94. Moreover, one's conduct cannot be grossly negligent without being negligent. *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied). Rose's claim against Nancy for negligence/gross negligence thus had no basis in law, and the trial court did not err in granting Nancy's

Rule 91a motion to dismiss as to Rose's negligence/gross negligence claim against her. *See* TEX. R. CIV. P. 91a.1.

For the foregoing reasons, we overrule Rose's first issue.

## Rose's Second Issue

In her second issue, Rose contends that she also alleged plausible claims against BCSW for breach of contract, breach of fiduciary duty, fraud, and negligence/gross negligence and that the trial court therefore erred in granting BCSW's Rule 91a motion to dismiss.

### *Breach of Contract*

Shortly after the trial court granted Nancy's Rule 91a motion to dismiss, Rose filed her second amended petition, adding BCSW and OHKD as defendants. Rose explained in the petition:

> The court's recently signed order to now allow Nancy to be dismissed "with prejudice" thus makes absolutely no sense unless the court is ready to place all liability for same on Attorney Valka and his law firm [BCSW] and/or the mediator with [OHKD] ... since it appears by the court's recent decision to dismiss Rose's claims as to Nancy with prejudice that the court has placed on said attorneys Valka and [the mediator] sole responsibility for the fraud as to the alleged ownership of the referenced Hartford policy at the mediation[ ].

Rose then alleged in the petition that BCSW was liable for breach of contract based on Valka's conduct (described above in the Breach of Contract section of Rose's First Issue) on Nancy's behalf. Additionally, Rose asserted that the following alleged actions by Valka constituted breach of contract: his failure "to abide by the terms of the Hartford

contract" and his failure to cooperate with Rose's former attorney Pitzner in securing redemption of the funds owed to Rose under the life insurance policy.

In BCSW's Rule 91a motion to dismiss, BCSW asserted that Rose's claim against it for breach of contract had no basis in law. More specifically, BCSW stated that even if Rose's allegations were taken as true, together with reasonable inferences drawn from them, Rose could not show that she and BCSW, or that BCSW and Pitzner, were parties to any contract or that BCSW had any contractual obligations to the trial court. BCSW contended that Rose, therefore, could not prove the remaining elements of a claim against it for breach of contract. BCSW also stated that it could not be held liable to Rose based on the attorney immunity doctrine. The trial court granted BCSW's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against BCSW for breach of contract.

Rose argues in this appeal that the trial court erred in its ruling. Rose contends that for the same reasons that she alleged a viable breach-of-contract claim against Nancy, she likewise alleged a viable claim against BCSW for breach of a unilateral contract because of Valka's conduct. We concluded above, however, that Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against Nancy for breach of contract. For the same reasons, we conclude that Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against BCSW for breach of contract. *See Runge*, 57 S.W.3d at 565. Rose's claim against BCSW for breach of contract thus had no basis in law, and the trial court did not err in granting BCSW's Rule 91a motion to dismiss as to Rose's breach-of-contract claim against it. *See* TEX. R. CIV. P. 91a.1.

*Breach of Fiduciary Duty*

In her second amended petition, Rose alleged that BCSW was also liable for breach of fiduciary duty based on Valka's conduct (described above in the Breach of Fiduciary Duty section of Rose's First Issue). In BCSW's Rule 91a motion to dismiss, BCSW asserted that Rose's claim against it for breach of fiduciary duty had no basis in law. More specifically, BCSW stated that even if Rose's allegations were taken as true, together with reasonable inferences drawn from them, Rose could not show that BCSW had a fiduciary relationship with her. BCSW also stated that it could not be held liable to Rose based on the attorney immunity doctrine. The trial court granted BCSW's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against BCSW for breach of fiduciary duty.

Rose argues in this appeal that the trial court erred in its ruling because she alleged that a fiduciary relationship existed between her and Nancy by virtue of Nancy's status as executor of Mr. Beddingfield's estate; that most of the actions about which she complained were knowingly engaged in by Valka on Nancy's behalf; and that "[w]hen a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such." *See JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 411 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (quoting *Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.)). We concluded above, however, that even if Rose's allegations are taken as true, she did not allege, nor could it have been reasonably inferred from her allegations, that she and Nancy had a fiduciary relationship with respect to the life insurance policy. Therefore,

Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle Rose to relief on her claim against Nancy for breach of fiduciary duty. *See Plotkin*, 304 S.W.3d at 479. Accordingly, Valka could not have knowingly participated in the breach of a fiduciary duty. *See JSC Neftegas-Impex*, 365 S.W.3d at 411.

Therefore, Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against BCSW for breach of fiduciary duty. Rose's claim against BCSW for breach of fiduciary duty thus had no basis in law, and the trial court did not err in granting BCSW's Rule 91a motion to dismiss as to Rose's breach-of-fiduciary-duty claim against it. *See* TEX. R. CIV. P. 91a.1.

*Fraud*

In her second amended petition, Rose alleged that BCSW was also liable for fraud based on Valka's conduct (described above in the Fraud section of Rose's First Issue). In BCSW's Rule 91a motion to dismiss, BCSW asserted that Rose's claim against it for fraud had no basis in law or fact. More specifically, BCSW stated that Rose's claim had no basis in law based on the attorney immunity doctrine. BCSW asserted that Rose's claim had no basis in fact because no reasonable person could believe the facts pleaded. The trial court granted BCSW's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against BCSW for fraud.

Rose argues in this appeal that the trial court erred in its ruling in part because the attorney immunity doctrine is a defensive issue that must be properly pleaded and proved and because her pleadings do not conclusively establish the defense. BCSW responds, however, that Rose's second amended petition established that Valka was

acting within the scope of his representation of Nancy and that BCSW therefore could not be liable to Rose, a non-client.

Attorney immunity does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015). An attorney who pleads the affirmative defense of attorney immunity therefore has the burden to prove that his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client. *Id.* But the fact that attorney immunity is a defensive issue does not preclude dismissal under Rule 91a based upon it. A cause of action has no basis in law under Rule 91a when the petition alleges additional facts that, if true, bar recovery. *Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

Here, Rose's allegations, taken as true, established that Valka's alleged fraudulent conduct, *i.e.*, representing to Rose at mediation on behalf of Nancy that someone other than Rose owned the life insurance policy, was part of the discharge of his duties to his client. *See, e.g., Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g). Whether the substance of Valka's alleged representation was incorrect does not change the *kind* of conduct in which Valka engaged. Accordingly, Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against BCSW for fraud. *See Cantey Hanger, LLP*, 467 S.W.3d at 484. Rose's fraud claim against BCSW thus had no basis in law. *See* TEX. R. CIV. P. 91a.1. We need not reach whether Rose's fraud claim against BCSW had a basis

in fact. The trial court did not err in granting BCSW's Rule 91a motion to dismiss as to Rose's fraud claim against it. *See id.*

*Negligence/Gross Negligence*

Finally, in her second amended petition, Rose alleged that BCSW was liable for negligence/gross negligence based on Valka's conduct (described above in the Negligence/Gross Negligence section of Rose's First Issue). In BCSW's Rule 91a motion to dismiss, BCSW asserted that Rose's claim against it for negligence/gross negligence "fail[ed] as a matter of law." More specifically, BCSW stated that even taking Rose's allegations as true, together with inferences reasonably drawn from them, Rose failed to show the existence of a duty owed to her by BCSW regarding the Hartford life insurance policy. BCSW also stated that it could not be held liable to Rose based on the attorney immunity doctrine. The trial court granted BCSW's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against BCSW for negligence/gross negligence.

Rose argues in this appeal that the trial court erred in its ruling. Rose contends that for the same reasons that she alleged a negligence/gross negligence claim against Nancy, she likewise alleged a negligence/gross negligence claim against BCSW because of Valka's conduct. We concluded above, however, that Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against Nancy for negligence/gross negligence. For the same reasons, we conclude that Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle her to relief on her claim against BCSW for negligence/gross negligence. *See Pugh*, 243 S.W.3d at 94; *Trevino*, 782 S.W.2d at 949. Rose's claim against

BCSW for negligence/gross negligence thus had no basis in law, and the trial court did not err in granting BCSW's Rule 91a motion to dismiss as to Rose's negligence/gross negligence claim against it. *See* TEX. R. CIV. P. 91a.1.

For the foregoing reasons, we overrule Rose's second issue.

**Rose's Third Issue**

In her third issue, Rose contends that she alleged plausible claims against Hartford for breach of contract, conspiracy to commit fraud, and participating in a concert of action to commit fraud and that the trial court therefore erred in granting Hartford's Rule 91a motion to dismiss.

*Breach of Contract*

In her second amended petition, Rose alleged that she was the "sole owner and/or sole trustee" of the Hartford life insurance policy. Rose then claimed that the following actions by Hartford constituted breach of contract: its failure "to abide by the terms of the Hartford contract" and its failure to cooperate with Rose's former attorney Pitzner in securing redemption of the funds owed to Rose under the life insurance policy. In Hartford's Rule 91a motion to dismiss, Hartford asserted that Rose's claim against it for breach of contract had no basis in law. More specifically, Hartford stated that Rose had failed to allege a contract between them that was breached. The trial court granted Hartford's Rule 91a motion to dismiss and dismissed with prejudice Rose's claim against it for breach of contract.

Rose argues in this appeal that the trial court erred in its ruling because she asserted a plausible breach-of-contract claim against Hartford by alleging: "(1) Rose was

the sole owner of the policy (and thus entitled to the entirety of the policy's cash surrender value); (2) Hartford was a party to the insurance contract; and (3) Hartford breached that contract by paying one-half of the cash surrender value to James." Hartford responds, however, that Rose's allegations did not entitle her to relief against it for breach of contract because Rose's second amended petition also alleged that Hartford distributed the cash surrender value of the life insurance policy according to a signed settlement agreement and trial court order.

As stated above, a cause of action has no basis in law under Rule 91a when the petition alleges additional facts that, if true, bar recovery. *Guillory*, 470 S.W.3d at 240. Here, although Rose asserted that Hartford breached the insurance contract by paying one-half of the cash surrender value to James, Rose also alleged the following facts in her second amended petition: After initially reaching a mediated settlement, Rose learned that Nancy was not the owner of the life insurance policy but that Rose herself was the "sole owner and/or sole trustee." Rose and Nancy subsequently attended a second mediation.

> Since I was destitute at the time ... , I accepted at the time being "duped" by my mom, Nancy, and reluctantly and in "bad judgment" agreed to take 50% of the Hartford surrender value based on a $10,000 advance by my mom, Nancy, from a future settlement payment, so that I could have food to eat the next day and minimal funds to survive until the Hartford funds came in.

Nancy's attorney Valka, on behalf of Nancy, thereafter filed a "Motion to Enforce Mediated Settlement." On January 29, 2015, the trial court ordered Rose to sign certain documents so that Hartford could cancel the life insurance policy and award one-half of

the cash surrender value to Rose and the other half to James. Rose ultimately signed the documents and received one-half of the cash surrender value of the life insurance policy. James received the other half.

Rose's second amended petition therefore established that instead of Hartford *breaching* the life insurance policy by paying only one-half of the cash surrender value to her and paying the other one-half of the cash surrender value to James, Hartford was actually doing precisely what Rose told Hartford to do. *See Runge*, 57 S.W.3d at 565 (stating that one of the elements of a breach-of-contract claim is defendant breaching the contract).

Rose replies that the existence of a prior settlement agreement is an affirmative defense that must be pleaded and proved by Hartford and that Rose's petition did not conclusively establish the affirmative defense. Rose argues that even if there was a prior settlement agreement, a Rule 91a dismissal is inappropriate because it does not allow for the possibility that the settlement should be set aside for fraud. In this case, however, we have already upheld the trial court's granting of Nancy's and BCSW's Rule 91a motions to dismiss as to Rose's claims that the settlement agreement should be set aside for fraud.

We therefore conclude that Rose's allegations, taken as true, together with inferences reasonably drawn from them, did not entitle Rose to relief on her claim against Hartford for breach of contract. *See id.* Rose's claim against Hartford for breach of contract thus had no basis in law, and the trial court did not err in granting Hartford's Rule 91a motion to dismiss as to Rose's breach-of-contract claim against it. *See* TEX. R. CIV. P. 91a.1.

### *Conspiracy to Commit Fraud and Participating in a Concert of Action to Commit Fraud*

Rose next contends that she alleged plausible claims against Hartford for conspiracy to commit fraud and for participating in a concert of action to commit fraud.

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose (in this case, fraud) or to accomplish a lawful purpose by unlawful means. *McWhorter v. Sheller*, 993 S.W.2d 781, 787 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998)). The elements of a civil-conspiracy claim are: (1) two or more persons; (2) an object to be accomplished (in this case, fraud); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Once a civil conspiracy is proven, each conspirator is responsible for the acts done by any other conspirator to further the conspiracy. *McWhorter*, 993 S.W.2d at 788.

The similar "concert of action" theory of liability has been explained as follows by the Texas Supreme Court:

> A version of the theory has been articulated by Prosser and Keeton as follows:
>
>> All those who, in pursuance of a common plan or design to commit a tortious act [in this case, fraud], actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's acts done for their benefit, are equally liable.
>
> W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 46, at 323 (5th ed. 1984).... The Restatement also incorporates this principle, imposing liability on a person for the conduct of another which causes harm if the defendant:

(a) does a tortious act [in this case, fraud] in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) OF TORTS § 876 (1977)....

*Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). "The purpose of the concert of action theory is to deter antisocial or dangerous behavior." *Id.* at 644. The Texas Supreme Court has further stated, however, that whether the "concert of action" theory of liability is recognized in Texas is "an open question." *Id.* at 643.

Hartford argues that Rose failed to raise these claims against it in her second amended petition and that to permit her to assert such claims now would violate Texas's "fair notice" pleading standard. "Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see* TEX. R. CIV. P. 47(a). Pleadings are to be liberally construed in favor of the pleader. *See Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). "A court should uphold the petition as to a cause of action that may be reasonably inferred from what is

specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993).

In this case, Rose's second amended petition contained specific "claims" on which she was seeking to recover: "Count One: Breach of Contract," "Count Two: Breach of Fiduciary Duty," and "Count Three: Fraud and/or Fraudulent Misrepresentation and/or Negligence/Gross Negligence." Under the "Fraud and/or Fraudulent Misrepresentation and/or Negligence/Gross Negligence" claim, Rose alleged in pertinent part that Hartford paid $335,000 to James "in error and/or as a co-conspirator to fraud." Rose alleged that Hartford made the payment to James at the request of Valka, on behalf of Nancy and/or James, and "with Hartford apparently participating in said fraud knowing at the time of said payment that said funds ... belonged to Rose as sole owner(s) and/or sole trustee(s)." Rose asserted that she sought "restitution of said funds" from James and/or Hartford and/or Valka and/or the mediator and their respective law firms "plus related consequential and/or other damages she may have suffered as a result of this erroneous payment by Hartford to James at a time when both Hartford and James knew or should have known such funds belonged to Rose."

Rose argues that when her pleadings are liberally construed in her favor, she has asserted plausible claims against Hartford for civil conspiracy and concert of action by alleging:

> (1) Hartford was a co-conspirator with Nancy, Valka and other defendants; (2) the defendants sought to deprive her of one-half of the cash surrender value of the policy; (3) Hartford knowingly "participat[ed]" with the other defendants; (4) Hartford fraudulently paid the money to James; and (5) Rose suffered damages as a proximate result.

But Rose's factual allegations are not sufficient to reasonably infer a conspiracy or concert of action between Hartford and the other defendants to commit the underlying tort of fraud. The mere general allegations from Rose that Hartford acted "as a co-conspirator to fraud" and "apparently participat[ed] in said fraud" are insufficient to give fair notice to Hartford that Rose was alleging claims against it for conspiracy to commit fraud and for participating in a concert of action to commit fraud. *See, e.g.*, *White v. Jackson*, 358 S.W.2d 174, 178 (Tex. Civ. App.—Waco 1962, writ ref'd n.r.e.) (holding that bare allegation that defendant was negligent was insufficient to give fair notice of the claim involved). This is especially true since Rose expressly identified in her pleadings only breach of contract, breach of fiduciary duty, fraud, and negligence/gross negligence as her claims.

We conclude that Rose's claims against Hartford for conspiracy to commit fraud and for participating in a concert of action to commit fraud were therefore not before the trial court because they did not satisfy the "fair notice" standard for pleading. *See Low*, 221 S.W.3d at 612. For the foregoing reasons, we therefore hold that the trial court did not err in granting Hartford's Rule 91a motion to dismiss. *See* TEX. R. CIV. P. 91a.1. We overrule Rose's third issue.

### Rose's Fourth Issue

In her fourth issue, Rose contends that she alleged plausible claims against James for conspiracy to commit fraud and for participating in a concert of action to commit fraud. Rose also argues that James is a necessary party because Hartford paid the

disputed funds to him. Rose asserts that, for these reasons, the trial court erred in granting James's Rule 91a motion to dismiss.

Like Hartford, James first responds that Rose failed to raise the claims against him for conspiracy to commit fraud and for participating in a concert of action to commit fraud in her second amended petition and that to permit her to assert such claims now would violate Texas's "fair notice" pleading standard. Rose argues, however, that when her pleadings are liberally construed in her favor, she has asserted plausible claims against James for civil conspiracy and concert of action by alleging:

> (1) James was a co-conspirator with Hartford and other defendants; (2) the defendants sought to deprive her of one-half of the cash surrender value of the policy; (3) James and other defendants fraudulently requested that Hartford pay him the money; (4) Hartford paid the money to James; and (5) Rose suffered damages as a proximate result.

But, as with her allegations regarding Hartford, Rose's factual allegations are not sufficient to reasonably infer a conspiracy or concert of action between James and the other defendants to commit the underlying tort of fraud. Rose's general allegations are insufficient to give fair notice to James that Rose was alleging claims against him for conspiracy to commit fraud and for participating in a concert of action to commit fraud. *See, e.g.*, *White*, 358 S.W.2d at 178. This is especially true since Rose expressly identified in her pleadings only breach of contract, breach of fiduciary duty, fraud, and negligence/gross negligence as her claims.

We conclude that Rose's claims against James for conspiracy to commit fraud and for participating in a concert of action to commit fraud were therefore not before the trial court because they did not satisfy the "fair notice" standard for pleading. *See Low*, 221

S.W.3d at 612. Furthermore, we have already upheld the trial court's granting of Nancy's, BCSW's, and Hartford's Rule 91a motions to dismiss; thus, James is not a necessary party. Accordingly, we hold that the trial court did not err in granting James's Rule 91a motion to dismiss. *See* TEX. R. CIV. P. 91a.1. We overrule Rose's fourth issue.

### Rose's Fifth Issue

In her fifth issue, Rose concedes that she can assert no plausible claim against OHKD and that the trial court therefore properly granted OHKD's Rule 91a motion to dismiss. Rose asserts that we should thus affirm the trial court's judgment to the extent that it dismissed with prejudice all of Rose's causes of action against OHKD. We will therefore affirm the trial court's judgment to the extent that it dismissed with prejudice all of Rose's causes of action against OHKD. *See* TEX. R. APP. P. 42.1(a).

### Rose's Sixth Issue

In her sixth issue, Rose contends that the trial court's awards of attorneys' fees and costs under Rule 91a should be reconsidered by the trial court. Rose argues that all of the claims that she alleged against Nancy, BCSW, Hartford, and James were plausible and that the granting of those defendants' Rule 91a motions to dismiss should therefore be reversed along with the attendant awards of attorneys' fees and costs. Rose argues alternatively that *some* of the claims that she alleged against Nancy, BCSW, Hartford, and James were plausible and that this cause must therefore be remanded to the trial court for further proceedings. Rose concedes, however, that the awards of attorneys' fees and costs under Rule 91a must be upheld if we conclude that none of her claims had a plausible factual basis.

Rule 91a provides in pertinent part:

> **91a.7 Award of Costs and Attorney Fees Required.** Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award.

TEX. R. CIV. P. 91a.7. We have already determined above that the trial court did not err in granting Nancy's, BCSW's, Hartford's, and James's Rule 91a motions to dismiss. Accordingly, Nancy, BCSW, Hartford, and James were prevailing parties on their motions to dismiss. *See id.* Therefore, the trial court did not err in awarding attorneys' fees and costs under Rule 91a.[1] *See id.* We overrule Rose's sixth issue.

### Rose's Seventh Issue

In her seventh issue, Rose contends that the trial court abused its discretion by assessing sanctions against her.

We review the imposition of sanctions under an abuse-of-discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Id.* We will not find an abuse of discretion in awarding sanctions if some evidence supports the trial court's decision. *Id.*

---

[1] The trial court awarded attorneys' fees under Rule 91a to Nancy, James, and Hartford. BCSW requested in its Rule 91a motion to dismiss that it be awarded the reasonable and necessary attorneys' fees that it incurred in preparing and presenting its motion to dismiss; however, the trial court's judgment does not address BCSW's attorneys' fees. Nevertheless, BCSW did not complain to the trial court and does not complain in this appeal about the issue.

Chapter 10 of the Civil Practice and Remedies Code allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support. *Id.* at 362. Section 10.001 specifies that the signatory of a pleading or motion certifies "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry":

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2017). "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id.* § 10.004(a) (West 2017).

Here, the trial court stated that Nancy's, James's, and BCSW's motion for sanctions against Rose was granted in part under Chapter 10 of the Civil Practice and Remedies Code. The trial court made the finding that Rose's original petition, first amended petition, and second amended petition "were groundless at the time of their filings." The trial court found that Rose did not make a reasonable inquiry into the legal and factual

bases of her claims. The trial court further found that Rose's claims had no basis in law or fact and were not warranted by good faith argument for the extension, modification, or reversal of existing law. The trial court noted that it had already found the same by granting Nancy's, James's, and BCSW's Rule 91a motions to dismiss.

Rose argues that, for the reasons discussed in her preceding issues, the trial court abused its discretion to the extent that it found her pleadings were groundless. We have determined above, however, that the trial court did not err in granting Nancy's, James's, or BCSW's Rule 91a motions to dismiss. We have upheld the trial court's findings that, based solely on Rose's pleadings of her causes of action, Rose's claims against Nancy, James, and BCSW had no basis in law. *See* TEX. R. CIV. P. 91a.1, 91a.6. Accordingly, we conclude that the trial court did not abuse its discretion in assessing sanctions against Rose based on her violation of Section 10.001(2). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001(2), 10.004(a).

Because we conclude that the imposition of sanctions comports with the requirements of Chapter 10, we need not reach the issue of whether the trial court abused its discretion in assessing sanctions under Rule of Civil Procedure 13 and its inherent power. We overrule Rose's seventh issue.

**Rose's Eighth Issue**

In her eighth issue, Rose contends that the assessment of attorneys' fees and costs under Section 10.002(c) of the Civil Practice and Remedies Code should be reconsidered by the trial court. Section 10.002(c) provides:

> The court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(c) (West 2017).

Rose argues that the only basis under which sanctions might have arguably been proper would have been because of Rose's alleged dilatory conduct. *See id.* § 10.001(1). Rose asserts that the award to Nancy and James of attorneys' fees that they incurred in the preparation of their motion for sanctions should therefore be remanded so that the defendants can segregate the attorneys' fees incurred with respect to Rose's dilatory conduct from the remainder of their fees.

We concluded in Rose's Seventh Issue, however, that the trial court did not abuse its discretion in assessing sanctions against Rose based on her violation of Section 10.001(2). Therefore, we need not reach Rose's argument because it is based on the presumption that we concluded that sanctions were only proper based on Section 10.001(1). The trial court need not reconsider its assessment of attorneys' fees and costs under Section 10.002(c). *See id.* § 10.002(c). We overrule Rose's eighth issue.

### Pitzner's First Issue

In his first issue, Pitzner contends that the trial court abused its discretion by assessing sanctions against him under Rule of Civil Procedure 13. We review the imposition of sanctions under Rule 13 under an abuse-of-discretion standard. *Nath*, 446 S.W.3d at 361.

Rule 13 states in pertinent part:

> The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215, upon the person who signed it, a represented party, or both.

TEX. R. CIV. P. 13. "Rule 13 affords a court the option of imposing sanctions for pleadings, motions, or other papers signed in violation of the prohibition against filing documents that are groundless and brought in bad faith or groundless and brought for the purpose of harassment." *Metzger v. Sebek*, 892 S.W.2d 20, 52 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (quoting *Johnson v. Smith*, 857 S.W.2d 612, 617 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding)).

As indicated, however, sanctions for violating Rule 13 can only be assessed against an attorney when he or she has actually signed the offending pleading, motion, or other paper. *Id.* (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993)). In the suit underlying this appeal, *i.e.*, the second suit between Rose and Nancy, Pitzner did not sign any pleadings, motions, or other papers in his capacity as an attorney for any of the parties. Furthermore, Pitzner was not a party to the suit; therefore, he did not sign any pleadings, motions, or other papers as a party to the suit, nor were they signed on his behalf by an attorney representing him.

Nancy, James, and BCSW argue that even though Pitzner never signed any pleadings or motions as "attorney of record," Pitzner did appear as Rose's attorney of

record at some of the hearings. For instance, at the hearing on Nancy's Rule 91a motion to dismiss on May 28, 2015, the following exchange took place:

> [Nancy's Attorney]: Yes, sir. Judge, we're here on Defendant's, Nancy I. Beddingfield's, Motion to Dismiss pursuant to 91(a) of the Texas Rules of Civil Procedure.
>
> THE COURT: All right. Are you opposed to that?
>
> MS. ROSE BEDDINGFIELD: Yes, sir.
>
> MR. PITZNER: And I'm Mr. Pitzner. I am assisting her. I was a witness in the mediation, but I've been assisting her on the pleadings and –
>
> THE COURT: Are you her attorney?
>
> MR. PITZNER: Yes.
>
> ....
>
> [Nancy's Attorney]: May I cut in real quick, Your Honor? Just while we're here, and the reason I'm asking, is I'm not sure, and I would like for Mr. Pitzner to state, whether or not he's going to appear as attorney of record for Ms. Beddingfield, or not. At the previous hearing, he's saying he's assisting her.
>
> MR. PITZNER: I'll appear as attorney of record.

At a hearing on July 30, 2015, Pitzner then stated that he was Rose's "consultant" and that he could not be her attorney in this case because he was a fact witness. After Rose attempted to argue her case with Pitzner's assistance, the trial court then designated Pitzner as Rose's attorney: "Wait a minute. He's your lawyer. You let him talk. I'm -- I'm -- I'm entering an order. I find -- I find him -- I find you're her attorney, period." At the conclusion of the hearing, the following exchange then took place:

> [Hartford's Attorney]: Your Honor, I guess one final request. Given what I've seen so far, can we just have a reminder to Mr. Pitzner of the

obligations of all lawyers, everybody that's a licensed lawyer in this room, the obligations under Rule 13 of the Texas Rules of Civil Procedure [and] the Civil Practice and Remedies Code, Section 9 and 10, with respect to meritorious filing?

MR. PITZNER: Your Honor, I -- Rose just engaged me to represent her at this hearing today, and Rose will confirm that. I was just engaged to represent her at the hearing today, and that was the scope of my representation.

THE COURT: Wait, wait, wait, wait. If you're her lawyer, you're her lawyer, period. Now, this thing about *I'm just here for this hearing*, or *I just got hired for that hearing*, I've never heard or seen that. I don't believe you can do that. I believe either you are, or you aren't. You're on her behalf speaking for her today, you've done it several times. You're her lawyer, and that's the way I perceived it. And I think you need to think about this lawsuit.

But even though Pitzner appeared as Rose's attorney of record at some of the hearings in this case, sanctions for violating Rule 13 can only be assessed against an attorney when he or she has actually signed the offending pleading, motion, or other paper. *Id.*; *see* TEX. R. CIV. P. 13.

Nancy, James, and BCSW also argue that even though Pitzner never signed any pleadings or motions as "attorney of record," he "signed the majority of Rose's pleadings and motions as a notary." But the signature of a notary does not certify the same thing that the signature of an attorney does under Rule 13. *Compare* TEX. GOV'T CODE ANN. § 406.016 (West 2013) *with* TEX. R. CIV. P. 13. Therefore, a person who signs a pleading, motion, or other paper only as a notary is not subject to sanctions under Rule 13. *See* TEX. R. CIV. P. 13.

For these reasons, the trial court abused its discretion by assessing sanctions against Pitzner under Rule of Civil Procedure 13. We sustain Pitzner's first issue.

**Pitzner's Second Issue**

In his second issue, Pitzner contends that the trial court abused its discretion by assessing sanctions against him under Chapter 10 of the Civil Practice and Remedies Code. We also review the imposition of sanctions under Chapter 10 under an abuse-of-discretion standard. *Nath*, 446 S.W.3d at 361.

As explained above, Section 10.001 lists four categories of certifications that the signatory of a pleading or motion makes when he or she signs the pleading or motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. Section 10.004(a) provides: "A court that determines that a person has *signed a pleading or motion* in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id.* § 10.004(a) (emphasis added).

For the same reasons that we concluded that the trial court abused its discretion by assessing sanctions against Pitzner under Rule of Civil Procedure 13, we conclude that the trial court abused its discretion by assessing sanctions against Pitzner under Chapter 10 of the Civil Practice and Remedies Code. We sustain Pitzner's second issue.

**Pitzner's Third Issue**

In his third issue, Pitzner contends that the trial court abused its discretion by assessing sanctions against him under the trial court's inherent authority. We also review the imposition of sanctions under the trial court's inherent authority under an abuse-of-discretion standard. *Ezeoke v. Tracy*, 349 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A trial court has inherent power to impose sanctions. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig. proceeding); *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.). But the power to sanction is limited by the Due Process Clause of the Fourteenth Amendment to the United State Constitution. *Bennett*, 960 S.W.2d at 40. Therefore, any imposition of sanctions must be preceded by "notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Greene v. Young*, 174 S.W.3d 291, 298 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The motion for sanctions filed by Nancy, James, and BCSW requested sanctions pursuant to Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. The motion did not mention the trial court's inherent authority as a legal basis for the sanctions. At the hearing on the motion for sanctions, Nancy's counsel stated for the first time that she, James, and BCSW were requesting sanctions based on the trial court's inherent power. But Pitzner was not present at the hearing. Therefore, Pitzner did not receive notice that sanctions were being sought under the trial court's inherent authority, and the issue was not tried by consent. Thus, the trial court improperly relied on its inherent authority to impose sanctions. *See id.* at 298-301; *Davila v. World Car Five Star*, 75 S.W.3d 537, 542 (Tex. App.—San Antonio 2002, no pet.).

Relying on the reasoning in *Finlan v. Peavy*, 205 S.W.3d 647 (Tex. App.—Waco 2006, no pet.), Nancy, James, and BCSW argue, however, that Pitzner cannot now complain that his due-process rights were violated. They contend that Pitzner's inaction in failing to request a hearing on his unsworn motion for new trial and in failing to file a

motion for new trial with sworn evidence and to request a hearing—rather than the lack of notice—caused him to miss the opportunities afforded him.

In *Finlan*, the trial court dismissed the underlying suit without notice. *Id.* at 650. When the appellants received notice of the dismissal, they timely filed a motion to reinstate and for new trial. *Id.* at 654. But they did not file a motion for an oral hearing even though they were given the opportunity to request a hearing. *Id.* The motions to reinstate and for new trial were subsequently overruled by operation of law. *Id.* at 650.

The appellants complained on appeal that they "were denied due process by the trial court's dismissing the case without proper notice and an opportunity to be heard," and the appellate court noted that trial courts are ordinarily required to provide notice of intent to dismiss a case. *Id.* at 653-54. The court explained, however, that "Texas courts have repeatedly held that a party is afforded due process by notice of actual dismissal and a hearing to reinstate a case because it is the same hearing with the same burden of proof as a hearing before dismissal." *Id.* at 654. The court then reasoned that the appellants could not complain that the trial court violated their due-process rights when they failed to take advantage of the opportunity to receive the same hearing post-dismissal that they would have received pre-dismissal. *Id.* The court explained that the appellants own inaction—rather than the lack of notice—caused them to miss the opportunities afforded them. *Id.*

*Finlan*, however, is distinguishable from this case because a hearing on a motion for new trial is not "the same hearing with the same burden of proof" as a hearing on a motion for sanctions. *See id.* at 654. At a hearing on a motion for sanctions, the party

seeking sanctions has the burden of establishing his right to relief.  *See GTE Commc'ns Sys. Corp.*, 856 S.W.2d at 730.  If the trial court assesses sanctions, however, and the party upon whom sanctions have been assessed files a motion for new trial, the party upon whom sanctions have been assessed has the burden to show entitlement to the requested relief. *Cocke v. Saks*, 776 S.W.2d 788, 790 (Tex. App.—Corpus Christi 1989, writ denied). Therefore, we conclude that Pitzner has not forfeited his due-process complaint.

We sustain Pitzner's third issue.

### Pitzner's Fourth Issue

In his fourth issue, Pitzner contends that the trial court abused its discretion by ordering him to pay attorneys' fees.  Having concluded above that the trial court abused its discretion by assessing sanctions against Pitzner, we conclude that the trial court abused its discretion by ordering Pitzner to pay Nancy and James the attorneys' fees that they incurred in the preparation of their motion for sanctions.  We sustain Pitzner's fourth issue.

### Conclusion

We reverse the trial court's judgment in part and render a take-nothing judgment in favor of Pitzner.  We affirm the trial court's judgment as to Rose.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed in part, reversed in part
Opinion delivered and filed December 5, 2018
[CV06]

