**Opinion issued August 6, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00379-CV

———————————

**MOSE A. GUILLORY AND MARY GUILLORY, Appellants**

**V.**

**SEATON, LLC D/B/A STAFF MANAGEMENT, Appellee**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-61407A**

---

## O P I N I O N

Mose A. Guillory and Mary Guillory ("Guillory") appeal the dismissal of their lawsuit against Seaton, LLC ("Seaton") under Texas Rule of Civil Procedure 91a. In three issues, Guillory challenges (1) the Texas Supreme Court's statutory authority to promulgate Rule 91a, (2) the constitutionality of Rule 91a, and (3) the

trial court's no-basis-in-law dismissal of their negligent-undertaking claim. We affirm.

## Background

Seaton entered into a service-provider contract with Waste Management. Seaton agreed to provide "the Staff Management solution"—a set of "integrated managed service provider solution services . . . [to] assist [Waste Management] with the effective and efficient management of non-employee workers . . . procured from certain third party vendors . . . ." One of those vendors, iWorks, was under contract with Waste Management to provide workers for Waste Management facilities. Under that contract, iWorks agreed to train the workers it provided. Under a later agreement between iWorks and Waste Management, Waste Management agreed to provide training in the use of heavy equipment.

Guillory was an employee of iWorks assigned to a Waste Management facility in Houston. He was injured while operating the Harris Baler, a device that compresses recyclable paper, plastic, and metal into small bales. According to Guillory's petition, the Harris Baler comes with a 200-page operation manual and a 25-minute safety video. Guillory also alleged that OSHA regulations mandate safety training before operating the device. Guillory alleged that he was not shown the operation manual or the safety video and that he received no training on the

operation of the Harris Baler except for some informal "instructions" from a fellow co-worker who did not speak the same language as Guillory.

Guillory sued Seaton, iWorks, Waste Management, and various other defendants. He asserted the following causes of action against Seaton: negligent undertaking, negligent hiring, negligent retention, negligent supervision, general negligence, gross negligence, and breach of contract. Seaton filed a Rule 91a motion to dismiss each of these causes of action for having no basis in law. The trial court granted the motion and severed Guillory's claims against Seaton so that the dismissal would be a final, appealable judgment. Guillory timely appealed.

**Rule 91a**

Rule 91a authorizes dismissal of lawsuits that have no basis in law or fact. TEX. R. CIV. P. 91a.1. Seaton's motion asserted a no-basis-in-law challenge. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1.

Courts have concluded that a cause of action has no basis in law under Rule 91a in at least two situations. In the first situation, the petition alleges too few facts to demonstrate a viable, legally cognizable right to relief. *See DeVoll v. Demonbreun*, No. 04-14-00116-CV, 2014 WL 7440314, at *3 (Tex. App.—San Antonio Dec. 31, 2014, no. pet.) ("Because DeVoll did not allege facts

3

demonstrating reliance or harm, his fraud claim has no basis in law."); *Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 WL 6493411, at *1 (Tex. App.—Fort Worth Nov. 20, 2014, no. pet. h.) (mem. op.) ("Drake pleaded no underlying claim or facts that would support an award of damages for harm to his credit . . . . Thus, Drake's harm-to-credit claim has no basis in law."). In the second situation, the petition alleges additional facts that, if true, bar recovery. *See Dailey*, 445 S.W.3d at 789 (breach-of-fiduciary-duty claim had no basis in law because pleaded facts affirmatively demonstrated that alleged breach occurred after fiduciary relationship ceased); *Wooley v. Schaffer*, 447 S.W.3d 71, 80–81 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) (Frost, C.J., concurring) ("The allegations in Wooley's live pleading . . . would not entitle Wooley to the damages he seeks in each of his causes of action under this court's precedent applying an expansive interpretation of the *Peeler* doctrine. . . . [N]one of Wooley's causes of action has any basis in law."). In short, the plaintiff must plead sufficient facts to supply a legal basis for his claim but not so much that he affirmatively negates his right to relief.

**Dismissal of the Negligent-Undertaking Claim**

In his third issue, Guillory contends that the trial court improperly dismissed his claim against Seaton for negligent undertaking under Rule 91a.[1]

---

[1] The trial court dismissed all of Guillory's claims under Rule 91a for having no basis in law. Guillory challenges the trial court's conclusion that his negligent-

## A. Standard of review

We review a dismissal under Rule 91a de novo. *Dailey v. Thorpe*, 445 S.W.3d 785, 788 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We look only to "the pleading of the cause of action, together with any pleading exhibits" and do not consider any other part of the record. TEX. R. CIV. P. 91a.

## B. Establishing a negligent-undertaking claim

To establish a negligent undertaking, a plaintiff must demonstrate that "(1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and either (a) the plaintiff relied upon the defendant's performance, or (b) the defendant's performance increased the plaintiff's risk of harm." *Nall v. Plunkett*, 404 S.W.3d 552, 555–56 (Tex. 2013); *see* RESTATEMENT (SECOND) OF TORTS § 324A (providing rule for liability to third person for negligent performance of undertaking); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976) (adopting Restatement). The undertaking may be gratuitous or for consideration, and a contractual obligation may be an undertaking so long as it is accompanied by at least partial performance or reliance. *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991).

---

undertaking claim lacked a basis in law under Rule 91a, but he does not challenge the conclusion that his other claims lacked such a basis.

5

**C.   Does Guillory's negligent-undertaking claim have "no basis in law"?**

Guillory contends that the petition and the evidence attached to it demonstrate a legal basis for the claim that Seaton undertook a duty either by (1) contractually agreeing to ensure iWorks or Waste Management trained Guillory or (2) undertaking to actually provide training to Guillory.

Guillory's petition included numerous deposition excerpts, quoted promotional material, and other evidence inserted directly into the pleading. He attached the contract between Waste Management and Seaton ("the Seaton contract") and the contract between Waste Management and iWorks ("the iWorks contract") to his petition. There is no objection in the record to the inclusion of any of this evidence. We may look to both the petition and the attached exhibits in determining whether Guillory has asserted a negligent-undertaking claim with a basis in law. *See Dailey*, 445 S.W.3d at 788.

**1.   The theory that Seaton incurred a duty to ensure that other parties trained Guillory has no basis in law**

In its contract with Waste Management, Seaton agreed to provide "the Staff Management solution." Guillory maintains that, as part of these services, Seaton undertook to ensure that workers like Guillory were trained. Because the contract creates no such duty, we disagree.

Guillory's brief relies heavily on paragraph five of the "Scope of Work" section of the Seaton contract. That paragraph contains two clauses. In the first

6

clause, Seaton agreed to "assist in daily management of [Waste Management's] chosen temporary staffing suppliers." But that language is too vague to provide a basis in law for a duty to train or to ensure training. In the second clause, the contract notes Waste Management's "desire" that Seaton provide "[a]ssistance in enforcing [iWork's] contractual guarantees" and "facilitation, on behalf of Waste Management, in the distribution of WM-approved and generated safety materials to all temporary staffing suppliers." But this language is also vague. Further, the word "desire" in this context does not create an enforceable obligation to act accordingly. *See Redman v. Whitney*, 541 S.W.2d 889, 892 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.) ("An expression of desire or hope is not of itself an offer which will become a contract on acceptance by the adversary party.").

Guillory also relies on paragraph seven of the "Scope of Work" section of the Seaton contract. That paragraph obligates Seaton to "reasonably assist [Waste Management] in contract management, maintaining and/or establishing temporary service [and] temporary staffing supplier relationships, monitoring and enforcing temporary staffing supplier compliance under the contract terms and conditions in terms of both cost and performance related categories." The contract then devotes three pages to a detailed, albeit not exhaustive, list of the services required under this obligation. There is no mention of OSHA guidelines or equipment-operation

instruction.[2] There is no suggestion that Seaton had any control or responsibility for work conditions or task assignments. There is no indication that these services were to be performed for the benefit or protection of any third parties. Instead, these duties largely focus on taking care of billing and other routine administrative matters for Waste Management.

Given that the Seaton contract was "the entire agreement" between Seaton and Waste Management, we cannot conclude that the administrative duties Seaton assumed under it provide a basis to assert a broad duty to ensure that every worker received appropriate safety training for his or her daily assigned tasks. *See Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 637 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (rejecting negligent undertaking from contractual written-notice requirement when "[n]othing in [the contract] indicates that the purpose of providing written notice to TxDOT was to address safety issues. Nor does it indicate that the provision was for the benefit or protection of third parties."). Accordingly, there is no legal basis for a negligent-undertaking claim arising from services rendered under the Seaton contract.

---

[2] There is a reference to an audit of the temporary staffing suppliers, which primarily focuses on whether the suppliers are monitoring the immigration status, criminal history, and drug usage of the workers they hire. It does mention "distribution of [a] safety training video," but this video is not in the record and there is no indication that it contains any information regarding the Harris Baler.

**2. The petition exhibits affirmatively disprove that Seaton was responsible for training**

Guillory contends that Seaton "also assumed duties far beyond those set forth in the contracts. . . . [Seaton] actually assumed complete responsibility for conducting orientation safety training of temporary workers like Mose Guillory." Guillory argues that the legal basis for this conclusion arises from the Seaton contract, the iWorks contract, and various deposition excerpts incorporated into his petition.

The excerpts incorporated into the petition do not support Guillory's argument. According to the excerpts, Seaton negotiated contracts with temporary labor suppliers such as iWorks. But the same testimony affirms that the labor suppliers trained their personnel, not Seaton. The testimony also reflects that some labor suppliers were selected "because they did such a good job with the safety training."

The iWorks contract provides no basis to claim that *Seaton* assumed direct responsibility for safety training. It states that iWorks "is obligated to ensure that Personnel [sic] supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training . . . ." In an addendum to the iWorks contract, Waste Management agreed to take responsibility from iWorks "for ensuring that employees supplied by [iWorks] are trained in the safe and proper operation of all heavy equipment

operated in their assigned task." Seaton did not assume this duty and is not mentioned in the addendum. Guillory asserts that Waste Management subsequently "delegated" this duty in the Seaton contract but he provides no record cite to support this assertion and we have found no such delegation in that contract. And Guillory did not make this assertion in the petition.

The petition exhibits harmoniously present a structure whereby iWorks and Waste Management, but not Seaton, had the direct responsibility to train workers like Guillory. Accordingly, these exhibits do not provide a legal basis to support the claim that Seaton undertook to train Guillory.

We conclude that Guillory's negligent-undertaking claim lacks any basis in law under Rule 91a. Accordingly, we overrule Guillory's third issue.

**Statutory Authority to Promulgate Rule 91a**

In his first issue, Guillory contends that "Rule 91a is void and unenforceable because it conflicts with and is thus preempted by Chapter 10 of the Texas Civil Practice and Remedies Code." Chapter 10 limits the Texas Supreme Court's ability to issue sanctions rules. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001–.006 (West 2002). It provides: "Notwithstanding Section 22.004, Government Code, the supreme court may not amend or adopt rules in conflict with this chapter." *Id.* § 10.006. The Supreme Court adopted Rule 91a pursuant to Section 22.004(g) of the Government Code.

10

Guillory argues that Rule 91a is a sanctions rule because it awards attorney's fees and court costs to the prevailing party. He argues that several provisions of this "sanctions rule" violate Chapter 10.

First, we are not convinced that Rule 91a is a sanctions rule conflicting with Chapter 10 simply because it awards costs to a prevailing party. The purpose of sanctions is to punish attorneys and litigants who purposefully abuse the judicial system. "Sanctions are tools to be used by a court to right a wrong committed by a litigant." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 922 (Tex. 1991) (Gonzalez, J., concurring). Sanctions may be compensatory, punitive, or for deterrence. *Id.* "The court should also consider the relative culpability of the counsel and client when selecting the appropriate sanction." *Id.* The commission of sanctionable conduct creates a claim apart from the merits of the underlying dispute. *See CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300 (Tex. 2013) ("A motion for sanctions is a claim for affirmative relief that survives nonsuit if the nonsuit would defeat the purpose of sanctions.")*; see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S. Ct. 2447, 2456 (1990).

In contrast, Rule 91a does not punish bad behavior. Rather, it shifts the economic risks of litigation. *See K.F.K. v. T.W.*, 2005 UT App 85, ¶ 3, 110 P.3d 162, 163 (2005) (distinguishing fees awarded as sanctions from prevailing-party

fee shifting). Courts implement Rule 91a's risk-shifting mechanism without reference to the culpability, if any, of any party or attorney. Instead, the award is based upon which party prevails on the motion. TEX. R. CIV. P. 91a.7. This mirrors the risk-shifting mechanisms found in many Texas statutes. *See, e.g.*, TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011); TEX. INS. CODE ANN. § 541.152 (West 2014); TEX. PROP. CODE ANN. § 21.019 (West 2014). This approach is not limited to Texas. *See, e.g.*, ALASKA STAT. § 09.60.010 (2003) (losing party pays attorney's fees of prevailing party in civil action); TENN. STAT. ANN. § 20-12-119 (West 2011) (Tennessee's equivalent to Rule 91a).

Second, even if Rule 91a were a sanctions rule, the Legislature has nevertheless mandated fee shifting in Rule 91a by passing Section 30.021 of the Texas Civil Practice and Remedies Code, which says: "[O]n a trial court's granting or denial, in whole or in part, of a motion to dismiss filed under the rules adopted . . . under Section 22.004(g), Government Code, the court shall award costs and reasonable and necessary attorney's fees to the prevailing party." TEX. CIV. PRAC. & REM. CODE ANN. § 30.021 (West 2015). If Section 30.021 conflicts with Chapter 10, Section 30.021 prevails because it is the more specific statutory provision and because it was enacted after Chapter 10. *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 297 (Tex. 2011).

Accordingly, we overrule Guillory's statutory challenge to Rule 91a.

**Constitutionality of Rule 91a**

In his second issue, Guillory contends that Rule 91a is unconstitutional on its face and as applied. We review the constitutionality of a rule of procedure in the the same manner as we review the constitutionality of statutes. *See N.N. v. Inst. for Rehab. & Research*, 234 S.W.3d 1, 14 (Tex. App.—Houston [1st Dist.] 2006), *judgment withdrawn*, No. 01-02-01101-CV, 2007 WL 4279613 (Tex. App.—Houston [1st Dist.] Dec. 5, 2007). "Settled statutory law and common law precedent, however, presume that statutes are constitutional and impose a heavy burden on the challenger to demonstrate unconstitutionality." *Id.*

**A.     Distinguishing facial and as-applied constitutional challenges**

"Under a facial challenge . . . the challenging party contends that the statute, by its terms, always operates unconstitutionally." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995) A "facial challenge contrasts with an 'as applied' challenge, under which the plaintiff argues that a statute, even though generally constitutional, operates unconstitutionally as to him or her because of the plaintiff's particular circumstances." *Garcia*, 893 S.W.2d at 518 n.16. "We may not hold the statute facially invalid simply because it may be unconstitutionally applied under hypothetical facts which have not yet arisen." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 463 (Tex. 1997), as supplemented on denial of reh'g (Oct. 9, 1997).

**B.    Challenges to the constitutionality of Rule 91a on its face**

**1.    Open courts**

Guillory contends that the fee-shifting mechanism in Rule 91a imposes a pay-to-play rule that violates the open courts provision of the Texas constitution, which says: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. 1, § 13.

Rule 91a's fee-shifting violates the open courts provision if the "requirement is an unreasonable financial barrier to access to the courts in light of the state interest involved." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 449 (Tex. 1993). Guillory argues that because plaintiffs risk paying defendants' attorney's fees, Rule 91a effectively limits plaintiffs' access to the courts. We conclude that Rule 91a is not an unreasonable financial barrier for four reasons.

First, Rule 91a is not a pay-to-play rule; merely shifting litigation-cost risk is fundamentally different then requiring actual payment as a prerequisite to judicial review.

Second, we do not agree that prevailing-party fee-shifting "chill[s] the filling of *all* claims, legitimate and illegitimate alike, by threats of calamitous fee awards." Many plaintiffs will not face this threat. Mutual fee-shifting discourages

14

defendants from challenging causes of action with arguable bases in law and fact because they risk paying plaintiffs' attorney's fees.

Third, Rule 91a limits plaintiffs' risk by setting a 60-day deadline to file a Rule 91a motion after the first pleading containing the challenged cause of action and a 45-day deadline for the court to rule on the motion. TEX. R. CIV. P. 91a.3. Thus, plaintiffs risk paying for a few months of litigation, instead of a few years.

Fourth, plaintiffs have ample opportunity to assess the merits of a Rule 91a motion before risking an attorneys' fee award. A defendant's motion must "state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law." The plaintiff, once armed with this information, has at least 21 days to either nonsuit, amend the petition, or do nothing and risk dismissal. TEX. R. CIV. P. 91a.2–.3. If the plaintiff nonsuits at least 3 days before the hearing, the court may not rule on the motion. TEX. R. CIV. P. 91a.5. Due to these protections, we cannot say that Rule 91a is an unreasonable financial barrier to access to Texas courts.

Guillory also argues that Rule 91a violates the open courts provision because it does not require the trial court to specify its reasons for the order. This deprives

parties of "access to the Texas courts without a possibility of meaningful appeal."[3] But we routinely hear meaningful appeals from summary judgments, special appearances, and other dispositive trial-court orders that may or may not specify the basis for the ruling. *Cf. Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92, 96 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Guillory's challenge to this practice relies on *In re Columbia Medical Center of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204 (Tex. 2009). There, the Texas Supreme Court held that "[p]arties to a dispute who choose to have the dispute resolved by a jury and endure the personal and financial inconvenience of such a trial are entitled to know why the verdict was disregarded*." Id.* at 211. "Jury trials are essential to our constitutionally provided method for resolving disputes" yet trial courts that overturn a jury verdict enjoy both wide discretion to do so and a limited appellate standard of review. *See id.* Accordingly, trial courts must specify the basis for overturning a jury's decision. *Id.*

These policy concerns are inapplicable here. The parties did not go through rigors of trial and did not have a jury decide their case. A trial court that grants a Rule 91a motion does not disregard a jury verdict, and our de novo review affords no deference to the trial court's ruling on the motion. *See Gardner v. Abbott*, 414

---

[3] Guillory also contends that, for the same reason, Rule 91a violates the constitutional right to a jury trial. For the reasons stated above, we reject this argument.

S.W.3d 369, 381 (Tex. App.—Austin 2013, no pet.) (*Columbia* does not apply to summary judgments). Therefore, trial judges need not specify their reasons for granting a Rule 91a motion to comport with the open courts provision.

Thus, Rule 91a does not facially violate the open courts provision.

### 2.    Free speech

Guillory contends that "Rule 91a, on its face . . . unreasonably burdens and interferes with the proper filing . . . of a cause of action grounded in a nonfrivolous argument for the extension, modification, or reversal of existing law . . . . [A]nd [it] interferes with [attempts] to apply existing law to a given case." Guillory gives no reasons for this conclusion except for his similar arguments covering the open courts provision. For the reasons stated in our analysis of those arguments, we reject Guillory's contention that Rule 91a violates the right to petition and the freedom of speech on its face.

### 3.    Due process

Guillory argues that Rule 91a violates the due process clauses of the U.S. and Texas constitutions on its face because the "rule chills the filing of even meritorious . . . claims." We rejected this argument in our analysis of the open courts provision. He also contends that due process is implicated because Rule 91a is a sanctions rule. As we discussed in our analysis of the statutory authority for

Rule 91a, the rule does not authorize sanctions. Thus we reject Guillory's facial due process challenge.

### 4. Equal protection

Finally, Guillory contends that Rule 91a violates the equal protection clauses of the U.S. and Texas constitutions on its face.

"The basis for an equal protection violation is that similarly situated individuals are treated differently by the government." *City of Humble v. Metro. Transit Auth.*, 636 S.W.2d 484, 491 (Tex. App.—Austin 1982, writ ref'd n.r.e.). Guillory merely repeats his argument that Rule 91a chills meritorious lawsuits but does not identify any group of similarly situated individuals being treated differently by the government. Accordingly, we reject his equal protection challenge. *See id.* at 491; *Salvatierra v. Via Metro. Transit Auth.*, 974 S.W.2d 179, 184 (Tex. App.—San Antonio 1998, pet. denied); *see also City of Houston v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

## C. Constitutional challenge to Rule 91a as applied

Turning to his as-applied challenge, Guillory has not shown that Rule 91a operates unconstitutionally in this case. He argues that Rule 91a is constitutionally infirm absent a provision that "a plaintiff may pursue a claim when it is warranted by . . . a nonfrivolous argument for the extension, modification, or reversal of

existing law"[4] but does not identify what, if any, extension, modification, or reversal of the law he seeks. He makes no argument and cites no source for a new or different law to apply in future Texas negligent-undertaking claims. Instead, he argues that he has a valid claim under *existing* Texas law.

In oral argument, Guillory asserted that there has been no Texas case factually identical to his but maintained that the facts here do establish a negligent undertaking under existing law. He argued that the process of reaching that conclusion under existing law will modify the law. We cannot agree that the process of applying existing law to new facts always involves an "extension, modification, or reversal of existing law." *See* TEX. R. CIV. P. 13. Every case has unique facts, but not every case modifies Texas law. Guillory does not ask us to resolve an undecided legal issue, adopt a new legal rule, or distinguish legal precedent. Accordingly, he has not argued for a modification, extension, or reversal of law.[5] Absent such an argument, his as-applied challenge fails.

---

[4]    He therefore contends that Rule 91a, as applied here, violates the open court provision, the right to petition and free speech, the right to a jury trial, due process, and equal protection.

[5]    Guillory makes several arguments in various sections of his brief regarding how courts should approach a Rule 91a challenge when a plaintiff argues to extend, modify, or reverse existing Texas law. Because Guillory does not argue to extend, modify, or reverse Texas law, we do not reach the issue.

19

**Conclusion**

We affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Justices Keyes, Higley, and Brown.