

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-18-00131-CV

Lorraine **KENYON**, Individually and as Executrix of the Estate of Theodore Kenyon,
Appellant

v.

**ELEPHANT INSURANCE COMPANY, LLC**,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2016CI14055
Honorable Michael E. Mery, Judge Presiding

### DISSENT TO OPINION ON EN BANC RECONSIDERATION

Opinion by:    Luz Elena D. Chapa, Justice
Dissenting Opinion by: Sandee Bryan Marion, Chief Justice
Dissenting Opinion by: Rebeca C. Martinez, Justice

Sitting en banc:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 1, 2020

The majority imposes a new duty upon an auto insurer that answers an insured's telephone call. This new duty requires an insurer to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk" of physical harm to the insured, including ascertaining whether the insured is physically safe before answering her questions or permitting or encouraging

her to document damage to her vehicle. Because I would hold no such duty exists in Texas, I respectfully dissent.

## Background

After she was involved in a single-vehicle accident in San Antonio, appellant Lorraine Kenyon ("Kenyon") called her auto insurer, appellee Elephant Insurance Company, LLC ("Elephant"), from her vehicle on the side of the road. Speaking to Elephant's first notice of loss ("FNOL") representative located in a Virginia call center, Kenyon reported she had no injuries but her vehicle sustained damage. The call transcript reflects Kenyon asked the FNOL representative: "Do you want us to take pictures?" The FNOL representative answered: "Yes, ma'am. Go ahead and take pictures." Kenyon's husband Theodore arrived on the scene, and Kenyon told him: "[T]hey need pictures." While Theodore was photographing Kenyon's vehicle, he was struck by another motorist and, tragically, died of his injuries.

Individually and as executrix of Theodore's estate, Kenyon asserted claims against Elephant for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, and exemplary damages based on gross negligence. The trial court granted Elephant's traditional and no-evidence motions for summary judgment on these claims.

## Legal Question at Issue

This court granted Kenyon's petition for permissive appeal to answer the following compound question, as posed by Kenyon:

> Where an insured calls her insurer from an accident scene to report a claim and the insurer instructs her as to what steps to take at the scene, including taking photographs outside of the vehicle,
>
> (1) does the insurer have a duty to exercise reasonable care in providing the instructions so as not to increase the risk of harm to its insured?

(2) does the insurer have a duty to train its employees who will be answering the insured's calls to exercise reasonable care in providing the instructions so as not to increase the risk of harm to its insured?

(3) if the insurer does not owe a duty to its insured from the outset, does the insurer assume such a duty by undertaking to instruct its insureds through the aftermath of an accident?

The trial court answered this question as a matter of law in its summary judgment order, holding Elephant "owed no duty to [Kenyon] with respect to [her] negligence, negligent undertaking, negligent failure to train and license, negligence per se, and gross negligence claims."

In her briefs, Kenyon argues the trial court erred in granting summary judgment for Elephant because an insurer owes its insured a common law duty to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk of harm to its insured." During oral argument, Kenyon asserted this duty necessarily obligated Elephant to ascertain whether Kenyon was safe before answering her questions and permitting or encouraging her to document damage to her vehicle. Counsel for Kenyon and Elephant agreed during oral argument that there does not appear to be any Texas precedent for recognizing such a duty under these or similar circumstances.

**Discussion**

There are three essential elements to a negligence cause of action: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) damages proximately resulting from that breach. *Midwest Emp'rs Cas. Co. ex rel. English v. Harpole*, 293 S.W.3d 770, 776 (Tex. App.—San Antonio 2009, no pet.) (citing *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)). "The threshold inquiry in a negligence case is duty. . . . [T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *accord Pagayon v. Exxon Mobil Corp.*,

536 S.W.3d 499, 503 (Tex. 2017). The question here is whether Elephant owed Kenyon the duty she alleges.

## A.      "Special relationship"

I first briefly address the majority's conclusion that the "special relationship" between insurer and insured gave rise to the duty Kenyon alleges. Although she did not raise this argument in her briefs on appeal, Kenyon's live pleading states: "Due to the special relationship between [Elephant] and [Kenyon] resulting from the insurer/insured relationship, [Elephant] owed [Kenyon] [a] duty to act as a reasonable and prudent insurance company when the insureds contacted [Elephant] regarding the claim arising from the single-vehicle accident."

Texas courts recognize a special relationship between insurer and insured imposes on insurers a duty of good faith and fair dealing in processing claims. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). This "special relationship" "arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims." *Id.* The supreme court has acknowledged that without a cause of action for breach of the duty of good faith and fair dealing, insurers could "arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed." *Id.* Accordingly, "[a] cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Id.*

Before today, no Texas court has held this duty of good faith and fair dealing imposes upon insurers a duty to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk" of physical harm to an insured, including ascertaining whether an insured is

physically safe before answering her questions or permitting or encouraging her to document damage to her vehicle. For this reason, I would hold that to the extent Kenyon relies on the special relationship between insurer and insured, that relationship does not give rise to the duty Kenyon asks us to recognize here.

**B.      *Phillips* factors analysis**

In a case such as this one in which, as the parties agreed at oral argument, a duty has not been recognized previously, we must determine whether such a duty should be recognized. *Pagayon*, 536 S.W.3d at 503. The supreme court has articulated considerations, known as the "*Phillips* factors," for doing so:

> The considerations include social, economic, and political questions and their application to the facts at hand. We have weighed the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. Also among the considerations are whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm.

*Id.* at 504 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)). "Of all these factors, foreseeability of the risk is the foremost and dominant consideration." *Phillips*, 801 S.W.2d at 525 (internal quotation marks and citation omitted). For the reasons stated below, I would hold the *Phillips* factors weigh against recognizing the duty Kenyon proposes.

**i.      Risk, foreseeability, and likelihood of injury**

"Harm is foreseeable if a person of ordinary intelligence should have anticipated the danger created by an act or omission." *Bos v. Smith*, 556 S.W.3d 293, 303 (Tex. 2018). Courts must "consider not only the foreseeability of the general danger but also whether the injury to the particular plaintiff or one similarly situated could be anticipated." *Id.* "'Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events

whereby the defendant's conduct brings about the injury.'" *Id.* (quoting *Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)).

Here, I would hold it is not reasonably foreseeable that an insured who calls her insurer to report a claim will be physically injured as a result of the insurer "providing [post-accident] guidance." While there may be dangerous situations or circumstances surrounding the scene of a traffic accident generally, it is not reasonably foreseeable that by taking an insured's call from the scene and answering her questions, an insurer will actually increase the risk of physical injury to her. It is even less foreseeable that an insurer will increase the risk of physical injury to someone not involved in the accident in the first place, such as Theodore. *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 657 (Tex. 1999) (holding injury to a plaintiff unknown to the defendant who was lured by a criminal to the defendant's parking lot after hours and assaulted "simply was not foreseeable, beyond a remote philosophic sense" because the plaintiff "was not so situated that injury to her might reasonably have been foreseen" and "[s]he was, in short, beyond [the defendant's] reasonable apprehension"). Even where, as here, the insurer encourages the insured to "[g]o ahead and take pictures," there is no reason for an insurer to anticipate that the insured will do so in dangerous conditions or circumstances. For these reasons, I would hold these factors weigh against recognizing the duty Kenyon proposes.

### ii. Social utility of the actor's conduct, magnitude of the burden of guarding against the injury, and consequences of placing the burden on the defendant

Kenyon argues the burden of imposing a duty on an insurer in a case like this one is "negligible," since all "Elephant [had] to do was to take a moment to ask its insured if they are in a safe location and, if not, to relocate themselves to a safe place and then call back." The duty Kenyon proposes, however, necessarily obligates an insurer not only to ask but actually ascertain

whether its insured is physically safe before taking the insured's call and answering her questions. I would hold this burden is not reasonable for an insurer that is not present at the accident scene.

Indeed, the record in this case demonstrates how difficult it would have been for Elephant's FNOL representative in Virginia to ascertain Kenyon's safety over the telephone. While Kenyon was speaking to the FNOL representative, a volunteer firefighter stopped by on his way to another call and Kenyon declined his assistance. When Elephant's FNOL representative asked Kenyon if she was "okay," Kenyon responded by saying she was uninjured and "[j]ust scared and a little sore." After the fact, Kenyon testified in her deposition that she felt she was in a safe place when she called Elephant and did not believe she or Theodore was in any danger.

For these reasons, I would hold these factors also weigh against recognizing the duty Kenyon proposes.

### iii.    Superior knowledge of the risk or right to control the actor who caused the harm

I would hold Kenyon, like any insured who calls her insurer to initiate a claim, had superior knowledge of the risks to her physical safety at the time she chose to do so. In her deposition testimony, Kenyon admitted she was in a better position than Elephant's FNOL representative in Virginia to evaluate her own physical safety. While an insurer may be more knowledgeable of the dangers surrounding traffic accident scenes generally, the duty Kenyon asks us to recognize would be triggered any time an insurer takes its insured's call and answers her questions, regardless of where she calls from or whether she believes she is physically safe at the time.

In addition, while the majority focuses on whether Elephant had the right to control Kenyon, I believe we must instead focus on whether Elephant had the right to control the actor who caused the harm. *See Pagayon*, 536 S.W.3d at 504 ("Also among the considerations are whether one party would generally have . . . a right to control the actor who caused the harm."). In

this case, that actor was the motorist who collided with Theodore, and there is no dispute Elephant had no right to control her. In general, an insurer answering an insured's telephone call from a remote call center would not have the right to control other motorists, nor would the insurer have the right to control the insured. Nothing in Kenyon's insurance policy required her to call Elephant immediately from the accident scene, and Elephant did not require Kenyon to take any immediate post-accident action. Therefore, I would hold these factors also weigh against recognizing Kenyon's proposed duty.

## C.       Negligent undertaking

I also would affirm the trial court's order granting summary judgment in Elephant's favor on Kenyon's negligent undertaking claim. The premise of Kenyon's claim is that even if Elephant did not owe Kenyon a duty of care from the outset, Elephant assumed a duty by undertaking to answer Kenyon's telephone call and "lead her through the post-accident process."

A duty may arise when a party undertakes to provide services either gratuitously or for compensation. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *Harpole*, 293 S.W.3d at 778. There is no cause of action for negligent undertaking unless the defendant acted or agreed to act expressly for the plaintiff's protection. *See Guillory v. Seaton, LLC*, 470 S.W.3d 237, 242 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 632 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Therefore, to determine whether Elephant assumed a duty to Kenyon, we must determine whether Elephant undertook to perform services for Kenyon that it knew or should have known were necessary for Kenyon's protection. *See Stutzman*, 46 S.W.3d at 838.

Kenyon argues Elephant undertook to "lead her through the post-accident process" "[b]y creating a call center and training FNOL employees to answer the insureds['] calls, often from the

scene of an accident, and gather information from them beyond the information necessary to open a claim." Kenyon does not cite any authority that this or similar conduct constitutes an undertaking giving rise to a duty of care beyond Elephant's contractual duty to process Kenyon's claim in good faith. Although Kenyon clearly believed she was calling Elephant for "instruction" regarding her claim, Kenyon testified she did not ask the FNOL representative for safety advice and did not expect her to provide safety advice. Further, Kenyon expressly argues any undertaking on Elephant's part was *not* for Kenyon's benefit: "Elephant undertook to guide her through the post-accident process, *but did so only to benefit itself*, and was intentionally indifferent to Mrs. Kenyon's and Mr. Kenyon's safety" (emphasis added). Therefore, because Elephant did not undertake any action that it knew or should have known were necessary for Kenyon's protection, I would hold the trial court did not err in concluding Elephant owed no duty to Kenyon with respect to her negligent undertaking claim.

### D.     Negligent failure to train and license

I also would affirm the trial court's order granting summary judgment in Elephant's favor on Kenyon's negligent failure to train and license claim. Kenyon argues Elephant was negligent in its training of FNOL representatives, rendering them "ill-equipped to handle Mrs. Kenyon's call in a manner that did not increase the risk of danger to her and her husband."

"The elements of a cause of action for negligently hiring, supervising, training, or retaining an employee are the following: (1) the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff's injury." *Wal-Mart Stores, Inc. v. Sanchez*, No. 04-02-00458-CV, 2003 WL 21338174, at *5 (Tex. App.—San Antonio June 11, 2003, pet. denied) (mem. op.) (citing *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137 (Tex. App.—Amarillo 1997, writ

denied)). An employer is not liable unless the employee commits an actionable tort under common law. *Id.* (citing *Gonzales v. Willis*, 995 S.W.2d 729, 739–40 (Tex. App.—San Antonio 1999, no pet.), *overruled in part on other grounds by Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447–48 (Tex. 2004)).

Here, the only tortious conduct Kenyon alleges the FNOL representative committed was negligently failing to "exercise reasonable care in providing [post-accident] guidance so as not to increase the risk of harm to [Elephant's] insured"—*i.e.*, the same conduct Kenyon alleges as the basis for her common law negligence claim. Without deciding whether Elephant owed Kenyon a duty to train its employees, because I would hold there was no duty giving rise to a common law negligence claim (and, therefore, no underlying tort), I also would hold the trial court did not err in rendering summary judgment on Kenyon's negligent failure to train and license claim.

**E.       Gross negligence**

Finally, the trial court granted summary judgment in Elephant's favor on Kenyon's request for exemplary damages based upon gross negligence. During the hearing on Elephant's motion for summary judgment, Kenyon's counsel represented that her claim for gross negligence is based on the same conduct giving rise to her claim for common law negligence. Again, because I agree with the trial court that Elephant did not owe Kenyon a common law duty of care in this case, I would hold the trial court did not err in concluding Elephant did not owe Kenyon a duty with respect to her claim for exemplary damages based on gross negligence.

**Conclusion**

For these reasons, I respectfully dissent and would affirm the trial court's order to the extent it granted Elephant's motion for summary judgment on Kenyon's claims for common law negligence, negligent undertaking, negligent failure to train and license, negligence per se, and

gross negligence. I agree with the majority that Kenyon's issues related to her claims for Texas Insurance Code and Texas Deceptive Trade Practices Act violations should be dismissed for lack of jurisdiction.

Sandee Bryan Marion, Chief Justice