**Opinion filed June 16, 2022**



In The

# Eleventh Court of Appeals

_____

## Nos. 11-20-00180-CV & 11-20-00188-CV
_____

**NASSER CHEHAB, Appellant**

**V.**

**WILLIAM P. HUTTENBACH AND HIRSCH
& WESTHEIMER, P.C., Appellees**

**On Appeal from the 189th District Court**

**Harris County, Texas**

**Trial Court Cause Nos. 2020-17699 & 2020-17699-A**

**M E M O R A N D U M   O P I N I O N**[1]

These appeals arise from two of the fourteen pro se actions filed in Harris County by Appellant, Nasser Chehab, in his efforts to collaterally attack prior

---

[1]Pursuant to Misc. Docket No. 20-9090 issued by the Texas Supreme Court on July 30, 2020, these appeals were transferred to us from the First Court of Appeals. Therefore, as the transferee court, we must decide the issues raised in these appeals in accordance with the precedent of the First Court of Appeals. *See* TEX. R. APP. P. 41.3.

judgments entered against him. All of Appellant's filings, and the appeals pending before us, stem from the same underlying dispute, which involves the sale of a vehicle and resulting promissory note. Shortly after Appellant filed these two appeals, he was declared to be a vexatious litigant by the 189th Judicial District Court of Harris County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.001 (West 2017).[2] Nevertheless, because the issues in these two appeals are closely related, we will address them together.

Here, Appellant sued the legal counsel that represented BBVA Compass Bank in the underlying loan litigation, Appellee William P. Huttenbach, and the law firm with which he is associated, Appellee Hirsch & Westheimer, P.C., for fraud, defamation, and legal malpractice. Appellees filed counterclaims and sought recovery against Appellant for, among others, defamation, fraud, tortious interference with contractual relations, costs, and attorney's fees; they also requested sanctions and injunctive relief against Appellant. Appellees filed a Rule 91a motion to dismiss Appellant's claims and a motion for summary judgment as to their counterclaims and requested that the trial court sever their counterclaims from Appellant's claims and assign the severed action a new cause number. The trial court granted Appellees' Rule 91a motion to dismiss, severed Appellees' counterclaims, granted summary judgment on them, and issued a permanent injunction against Appellant.

On appeal, Appellant asserts that the trial court erred when it (1) granted Appellees' Rule 91a motion to dismiss, (2) severed Appellees' counterclaims,

---

[2]A person who has been declared to be a vexatious litigant may not file either new pro se litigation or an appeal in a court to which the prefiling order applies unless he has received written permission to do so from the appropriate local administrative judge. CIV. PRAC. & REM. §§ 11.101(a), .102(a), .103(a). Because Appellant filed the underlying action and resulting appeals prior to being declared a vexatious litigant, he was not required to seek permission to file these proceedings from the appropriate local administrative judge.

(3) granted summary judgment in favor of Appellees as to their counterclaims, and (4) granted Appellees' request for permanent injunctive relief. We affirm.

## I. *Factual Background*

The origin of these appeals concerns a dispute involving a vehicle that Appellant purchased from a dealership. To finance the purchase, Appellant executed a promissory note and obtained a loan, which was later assigned to Compass Bank. Appellant sued BBVA, the successor to Compass Bank, and claimed that (1) the loan was void, (2) he should receive a refund of all payments he had made on the note, and (3) he was entitled to additional damages. Appellant did not prevail on his claims, and judgment was granted in favor of BBVA in 2016. Appellant subsequently filed a series of motions, i.e., to vacate the judgment, for reconsideration, for withdrawal of counsel, and thrice to recuse the judge who presided over these disputes. As a part of securing costs and sanctions in that proceeding, Huttenbach testified as to the attorney's fees he incurred. Appellant then filed an ethics complaint with the State Bar of Texas against Appellees, and later the underlying lawsuit that is the basis for these appeals.

## II. *Analysis*

### A. *Rule 91a Dismissal – Cause No. 11-20-00180-CV*

#### 1. *Standard of Review*

We review a Rule 91a dismissal de novo. *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016). Under Rule 91a, a party may move to dismiss a cause of action on the grounds that it has no basis in law or in fact. TEX. R. CIV. P. 91a.1. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id.*; *see Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, pet. denied) ("In conducting our review, we must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual

allegations in the pleadings to determine if the cause of action has a basis in law or fact." (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied))). A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. *Id.*

### 2. *Discussion*[3]

According to Appellant, the trial court erred when it granted Appellees' Rule 91a motion to dismiss because (1) Appellant's suit has a basis in law and in fact and (2) Appellees' motion failed to comply with the procedural requirements of Rule 91a. We disagree.

Appellees supply a multitude of bases to affirm the trial court's determination that Appellant's suit has no basis in law or in fact. First, Appellees contend that Appellant's causes of action are barred by the doctrine of attorney immunity. *See Guillory v. Seaton, LLC*, 470 S.W.3d 237, 240 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("[A] cause of action has no basis in law under Rule 91a" if "the petition alleges additional facts that, if true, bar recovery."). The attorney immunity doctrine protects attorneys from claims—including fraud—asserted by non-clients for actions taken by attorneys during the normal course of representing a client. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Because attorney immunity is an appropriate subject of Rule 91a motions, dismissal is proper when the scope of the attorney's representation is apparent on the face of the claimant's pleading. *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654–56 (Tex. 2020).

---

[3]We note at the outset that, as for Appellant's claim for legal malpractice, the general rule is that persons who are not in privity with the attorney cannot sue the attorney for legal malpractice. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999). In practical terms, the privity requirement means that an attorney cannot be liable for malpractice to anyone other than his client. *Id.* (citing *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996)). Moreover, Appellees' substantive defenses also apply to Appellant's legal malpractice claim.

As pleaded by Appellant, all three of his alleged causes of action are based on acts and conduct undertaken by Appellees in their capacity as counsel for BBVA in defense of the underlying lawsuit filed by Appellant. Notably, and although alleged, fraud is not an exception to the attorney immunity bar. *Cantey Hanger*, 467 S.W.3d at 483–84. Thus, under the attorney immunity doctrine, the facts pleaded by Appellant in his petition affirmatively bar any claim and recovery that he has asserted against Appellees. *See Bethel*, 595 S.W.3d at 658.

Second, Appellees contend that Appellant's asserted claims are barred by the judicial-proceedings privilege. Although similar to the attorney immunity doctrine, the judicial-proceedings privilege is an independent defense that serves an independent purpose. *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (citing *Cantey Hanger*, 467 S.W.3d at 485 n.12). However, as they apply to attorneys, the two doctrines function nearly identically. *See Youngkin v. Hines*, 546 S.W.3d 675, 679 n.2 (Tex. 2018).

The judicial-proceedings privilege is absolute and extends to any statement made by counsel, among others, and "attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982). The application of the privilege is simple: "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *Landry's, Inc.*, 631 S.W.3d at 46 (quoting *James*, 637 S.W.2d at 916). "The 'due course of a judicial proceeding' may include communications [made] 'in serious contemplation of such a proceeding.'" *Id.* (quoting *Cantey Hanger*, 467 S.W.3d at 485 n.12). The privilege "prohibits any tort litigation based on the content of the communication at issue," and it can be "tantamount to immunity." *Id.* at 46 & n.2 (internal quotation marks omitted). Further, the privilege

applies not only to statements made during litigation, but also to statements made in contemplation of and preliminary to any judicial proceeding, so long as the communication bears some relationship to pending or proposed litigation. *See Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Here, Appellant presents no evidence, and we have found none in the record, that *any* statements by Appellees were made outside of the context of a judicial proceeding or the underlying litigation. The exhibits attached to Appellant's original petition that purportedly support his legal theories consist of only pleadings, orders, or transcripts—papers and documents that are clearly attendant to a judicial proceeding and the underlying litigation. Because Appellant points to no statements made by Appellees outside of the underlying litigation or judicial context, his claims against Appellees for fraud, defamation, and legal malpractice are also barred by the judicial-proceedings privilege.

We hold that the claims asserted by Appellant against Appellees are barred by the attorney immunity doctrine and the judicial-proceedings privilege.[4] Thus, Appellant's suit against Appellees has no basis in law or in fact. As such, the trial court did not err when it granted Appellees' Rule 91a motion to dismiss.

Additionally, Appellees did not fail to comply with Rule 91a's procedural requirements. Appellant's only contention on this point consists of a general, global allegation that Appellees' motion failed to specifically identify each cause of action addressed by the motion, as required by Rule 91a. *See* TEX. R. CIV. P. 91a.2. However, the face of Appellees' motion itself and the supporting supplemental brief show that this assertion is incorrect. Appellant does not complain of any other

---

[4]Appellees raise additional arguments, namely that Appellant's common-law fraud claim fails as a matter of law and that Appellant's claims are barred by claim and issue preclusion. Because of our disposition of Appellees' attorney immunity and judicial-proceeding privilege arguments, we need not address their additional contentions. *See* TEX. R. APP. P. 47.1.

6

alleged procedural deficiencies, and we do not observe any in the record before us. Consequently, we overrule Appellant's first and second issues in Cause No. 11-20-00180-CV.

B. *Severance*

In both appeals, Appellant urges that the trial court erred when it severed into separate trial court cause numbers Appellant's claims and Appellees' counterclaims. We disagree.

Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. "This rule grants the trial court broad discretion with respect to severance and consolidation of causes." *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990) (citing *McGuire v. Commercial Union Ins. Co.*, 431 S.W.2d 347 (Tex. 1968)). We will not reverse the trial court's decision to grant a severance unless an abuse of discretion is shown. *RSL-3B-IL, Ltd. v. Prudential Ins. Co. of Am.*, 470 S.W.3d 131, 140–41 (Tex. App.—Houston [1st. Dist.] 2015, pet. denied) (citing *Horseshoe Operating Co.*, 793 S.W.2d at 658). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (citing *Horseshoe Operating Co.*, 793 S.W.2d at 658). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.* (citing *Horseshoe Operating Co.*, 793 S.W.2d at 658).

The underlying lawsuit clearly involves multiple claims and counterclaims. Appellees' counterclaims against Appellant for tortious interference with contractual relations, fraud, and defamation would have been the proper subject of a

separate lawsuit if independently asserted. And "while the two cases are factually intertwined, they are not so interwoven [as to render severance improper]." *See State v. Morello*, 547 S.W.3d 881, 889 (Tex. 2018). Appellant's claims against Appellees stem from Appellees' actions and conduct as counsel for BBVA in defense of Appellant's original lawsuit; the basis of Appellees' counterclaims arise from Appellant's actions against Appellees *after* Appellant's lawsuit was commenced. Nevertheless, the recoveries sought by Appellant and Appellees in their respective pleadings incorporate evidence that is not presented, or even required to prove the claims that are involved, in the other's asserted action. *See id.*

Appellees requested that the trial court sever all claims to be decided pursuant to their motion for summary judgment from the claims addressed in their Rule 91a motion to dismiss. Appellant contends that Appellees never requested severance; however, the record shows that they did so both in writing and orally at the hearing on their motion to dismiss. At this hearing, the trial court explained to Appellant the purpose of granting the severance (which was to allow the judgment dismissing Appellant's claims under Rule 91a to become final). This ruling and determination was well within the trial court's discretion. Moreover, no harm or reversible error can be related to the severance order. The appeals from both trial court cause numbers are pending before this court, and indeed, they are each addressed within this opinion.

We conclude that the trial court did not abuse its discretion when it granted Appellees' motion to sever. Accordingly, we overrule Appellant's issues regarding the trial court's grant of severance—the third issue in Cause No. 11-20-00180-CV and the first and second issues in Cause No. 11-20-00188-CV.

C. *Summary Judgment – Cause No. 11-20-00188-CV*

The trial court granted summary judgment as to Appellees' counterclaims for tortious interference with contractual relations, fraud, and defamation. The trial

court further granted Appellees' request for permanent injunctive relief. Appellant asserts that these determinations and rulings by the trial court are erroneous. We disagree.

### 1. *Standard of Review*

We review a trial court's grant of summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail*, 593 S.W.3d at 181; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014).

The movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see KMS Retail*, 593 S.W.3d at 181; *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d. 254, 257 (Tex. 2017). If the initial burden is met, the burden then shifts to the nonmovant to raise an issue of material fact. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). The evidence raises a genuine issue of material fact if "reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### 2. *Discussion*

Appellant's brief fails to address the three counterclaims (tortious interference with contractual relations, fraud, and defamation) upon which Appellees were

granted summary judgment. Appellant merely states that "the Appellee [sic] failed to show that there were no genuine issues of material fact." In the filings before us, nowhere does Appellant attempt to dispute the trial court's rulings or to argue the merits of the trial court's grant of summary judgment as to these claims. Either Appellant did not intend to appeal or raise these issues or, if he intended to do so, his briefing of the issues is so inadequate that the issues have been waived. *See* TEX. R. APP. P. 38.1. In any event, as to the trial court's determination of Appellees' counterclaims, Appellant has presented nothing for our review.[5] *Id.*

Appellant does adequately present his challenge of the trial court's grant of the permanent injunction against him. Appellant contends that Appellees failed to establish that they suffered an irreparable injury and have no adequate remedy at law. He further contends that the grant of injunctive relief violates his First Amendment rights. We disagree.

We review a trial court's ruling on an application for a permanent injunction for an abuse of discretion. *Livingston v. Livingston*, 537 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690–91 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). An abuse of discretion occurs when the trial court (1) acts arbitrarily and unreasonably, without reference to guiding rules or principles, or (2) misapplies the law to the established facts of the case. *Id.* The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision. *Id.*

To obtain permanent injunctive relief, a party must show (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Livingston*, 537 S.W.3d

---

[5]We note that the record and Appellees' briefing shows the trial court's grant of summary judgment on these issues is thoroughly supported.

at 587 (citing *Risner v. Harris Cty. Republican Party*, 444 S.W.3d 327, 339 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). When determining the appropriateness of a permanent injunction, a court should balance the competing equities, including the public interest. *Id.*

The record is replete with evidence in support of the first three elements. Appellant has repeatedly filed frivolous lawsuits against Appellees or their clients, has been sanctioned by courts for his persistent conduct, and has published slanderous statements online in an effort to harm Appellees' reputations. For example, Appellant has engaged in conduct that constitutes defamation per se. A statement is defamatory if it tends to (1) injure the subject's reputation; (2) expose him to public hatred, contempt, ridicule, or financial injury; or (3) impeach his honesty, integrity, or virtue. *Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Johnson v. Phillips*, 526 S.W.3d 529, 534 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)); *see also* CIV. PRAC. & REM. § 73.001 (West 2017) (defining libel). Defamation per se refers to defamation that arises from the statement's text without reference to any extrinsic evidence. *Dallas Morning News, Inc v. Tatum*, 554 S.W.3d 614, 626 (Tex. 2018). Remarks that adversely affect a person's fitness to conduct his business or trade are also deemed to be defamatory per se. *Id.* at 637–38 (citing *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015)). Whether a publication is capable of the defamatory meaning alleged is a question of law. *Id.* We construe the allegedly defamatory statement as a whole, in light of the surrounding circumstances. *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004).

Appellant filed a grievance with the State Bar of Texas against Huttenbach, although Huttenbach never represented Appellant in any capacity. In fact, Huttenbach's only connection with or to Appellant concerned Huttenbach's representation of the party (BBVA) that Appellant had sued in his original lawsuit.

11

The grievance alleged that Huttenbach made false statements to Appellant and engaged in filing a motion "as a means of running up attorney's fees." Appellant then posted his filed grievance on Facebook and claimed in the accompanying caption that Huttenbach, "repeatedly, resorted to personal attacks and unethical tactics because he doesn't have legal stand [sic]." Appellant also e-mailed copies of his filed grievance to opposing counsel in other cases in which Huttenbach was involved. Unlike the statements made by Appellees that Appellant has challenged, the purpose and content of Appellant's aforementioned social media and e-mail postings about Huttenbach were clearly made outside of the context of either the underlying litigation or a judicial proceeding.

The record before us does not support the allegations in Appellant's filed grievance. In particular, there are two alleged "false statements" by Huttenbach to which Appellant specifically refers in his pleadings, which he attached to his grievance and the e-mails that he sent to third parties to defame Huttenbach. The first statement is that Huttenbach referred to Appellant during litigation as a "serial plaintiff." The second statement concerned Huttenbach's reference to statements that Appellant directed to a trial court in a previous lawsuit, in which, according to the record, the following exchange occurred:

> [APPELLANT]: Judge, if the rape is inevitable, I'm not going to lay down and enjoy it. And that's exactly what you're trying to do.
>
> THE COURT: What? What did you say?
>
> [APPELLANT]: I said, if the rape is inevitable, I'm not going to lay down --
>
> THE COURT: Are you saying I'm trying to rape you?
>
> [APPELLANT]: That's what you are doing, Judge.

Appellant was found to be in direct contempt and was taken into custody. When Huttenbach later referenced this incident, Appellant accused him of making false statements in an effort to defame Appellant.

As to the allegation of "running up attorney's fees," Appellant contended in his original and amended petitions, which he attached to his grievance, that Huttenbach knowingly testified falsely as to the reasonable amount of attorney's fees he was owed. In fact, as part of an effort to secure sanctions and costs in another proceeding initiated by Appellant, Huttenbach filed a sworn declaration in which he testified to, among other things, the amount of reasonable and necessary attorney's fees that he had incurred. This affidavit was attached to Appellees' Rule 91a motion to dismiss. Appellant produced no evidence to support his "attorney's fees" assertion in the trial court below, and we have found none in the record before us.

The record shows that Huttenbach neither spoke falsely nor defamed Appellant in any manner with respect to the statements of which Appellant complains. Despite this, Appellant publicly and deliberately attempted to harm and taint Huttenbach's professional reputation by publishing false accusations about him. Thus, the first three elements of defamation per se are clearly met.

The final element is also satisfied; Huttenbach has no clear remedy at law. Appellant firmly stated during the hearing on Appellees' motion for summary judgment that he intended to continuously file grievances with the State Bar of Texas against Huttenbach that involved the same subject matter. His actions against Huttenbach have been designed and particularly calculated to damage Huttenbach's reputation and livelihood as a practicing attorney. Further, Appellant has demonstrated a continued willingness and intention to pursue this abusive and harassing path despite the monetary sanctions and numerous judgments that have been levied against him because of his conduct. Indeed, permanent injunctive relief is appropriate here.

Finally, Appellant contends that such injunctive relief violates his First Amendment rights. Not so. Defamation that disparages a person's business operations—their livelihood—constitutes defamation per se. *See In re Lipsky*, 460

S.W.3d at 596.  Still, such disparagement must be of the sort that is "peculiarly valuable" to the person's business or profession.  *Hancock v. Variyam*, 400 S.W.3d 59, 67 (Tex. 2013).  Truthfulness is peculiarly valuable to one's status in the legal profession, and especially with respect to the legitimacy of a lawyer's or a law firm's legal fees.  *Id.*

Under the circumstances presented to us, we cannot say that the permanent injunctive relief granted by the trial court is either inappropriate or violative of Appellant's First Amendment rights.  Therefore, we hold that the trial court did not abuse its discretion when it issued the permanent injunction.  Accordingly, we overrule Appellant's third issue in Cause No. 11-20-00188-CV.

## III.  *This Court's Ruling*

We affirm the orders and judgments of the trial court.


W. STACY TROTTER

JUSTICE


June 16, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

14